UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                           ) | Crim. No. 05-cr-10004 PBS |
| ) | |
| OLEKSIY SHARAPKA    ) | |
|    Defendant.              ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION IN LIMINE**

Defendant SHARAPKA has moved this Honorable Court to preclude the Government from introducing those portions of the defendant's statement that relate to the defendant's activities in Atlanta, Georgia, where he committed crimes substantially similar to the crimes for which he is charged in the indictment, was arrested by federal authorities, and fled from pretrial release a few weeks before restarting his fraudulent conduct in Boston. As grounds therefore, the defendant claims that the probative value of this evidence substantially outweighs its prejudicial value pursuant to Federal Rule of Evidence ("F.R.E.") 403. The Government opposes this motion.

**RELEVANT FACTUAL BACKGROUND**

Defendant is charged in a ten count superseding indictment with five counts of mail fraud in violation of 18 U.S.C. § 1341, one count of possession of five or more identity documents with intent to defraud in violation of 18 U.S.C. § 1028(a)(3), one count of possession of 15 or more access devices in violation of 18 U.S.C. § 1029(a)(3); one count of possession of device making equipment in violation of 18 U.S.C. § 1029(a)(4); and two counts of aggravated identity theft in violation of 18 U.S.C. § 1028A.

These charges stem from an arrest of the defendant that occurred on November 5, 2005.

As explained in more detail in the Government's Trial Brief, which is incorporated herein by reference, the charges relate to a fraud scheme in which the defendant obtained identity information, including social security numbers, bank account numbers, and credit card numbers, which he used to fraudulently purchase items over the Internet, ship them to mail boxes he controlled under false names, and reship them to individuals abroad.  Defendant also used the bank account information to withdraw money from victim's bank accounts.

Defendant was arrested by the United States Secret Service and local authorities in Atlanta, Georgia on May 17, 2004, less than six months prior to the arrest in Boston on the instant case.  Defendant's Atlanta arrest bears an uncanny similarity to his Boston arrest.  Defendant was arrested in Atlanta after he picked up a package that had been purchased using a stolen credit card number and shipped to a mail box defendant maintained in a false name.  During the course of the investigation related to the Atlanta arrest, federal and state agents found the defendant in possession of numerous identification cards with his photograph and the identity information of other individuals.  He was also found with over seventy blank credit cards with credit card information programmed onto their magnetic strip, as well as a computer containing information about approximately sixty fraudulently obtained credit card numbers.  The defendant confessed his involvement in a scheme to use stolen identity information, credit cards, and bank account numbers to purchase items over the Internet and ship them abroad to two agents, United States Secret Service Agent Benedict Murray and Postal Inspector Jessica Wagner.

After his arrest in Atlanta, defendant offered to cooperate with the Atlanta authorities in their investigation of his co-conspirators.  At least partly as a consequence, defendant was released from pretrial detention on or about June 23, 2004.  One of the conditions of his pretrial

release was that the defendant would be subject to twenty-four hour monitoring through an electronic bracelet. On or about July 2, 2004, the defendant removed his electronic bracelet and fled. According to his own statements to the Boston Police and the Boston FBI, the defendant then made his way to Boston, where he continued the fraud scheme he had been arrested for in Atlanta.

**ARGUMENT**

Federal Rule of Evidence 404(b) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, identity, or absence of mistake or accident..." The government proposes to introduce evidence at the upcoming trial in this matter related to defendant's conduct in Atlanta.[1]

This proposed evidence is offered not to show that the defendant's character was "in conformity therewith," but rather to prove opportunity, intent, plan, knowledge, identity and absence of mistake or accident. Specifically, the fact that defendant had previously been arrested for the same conduct proves that he knew that the credit card and identity information he was using had been fraudulently obtained, and therefore that he had the intent to commit the crimes with which he is charged when he was again caught with these same types of materials in Boston. It also proves that he had the opportunity to commit the crime in that he had access to fraudulent credit information and had the technical skills necessary to create false access devices,

---

[1] Defendant's Motion In Limine only seeks to preclude evidence concerning defendant's statements about the Atlanta conduct, his arrest in Atlanta and his flight from Atlanta to Boston, not substantive evidence about these facts. However, because the issues involved are the same, the Government's response relates not only to defendant's statements on this subject, but also to the substantive evidence that the Government seeks to admit from the Atlanta agents.

3

communicate with others over the Internet, and purchase and receive goods using stolen identity, credit card and bank account information.  It further proves that the items found in his possession in Boston were not there by mistake or accident, and that they did not belong to some co-conspirator or to a roommate as they were essentially identical to the types of items found in his possession a few months earlier in another city.  Finally, evidence of the Atlanta crimes, arrest and flight constitutes evidence of a common (and continuing) scheme or plan.

The Supreme Court has held that "[t]he threshold inquiry a court must make before admitting similar acts evidence under Rule 404(b) is whether that evidence is probative of a material fact other than character."  Huddleston v. United States, 485 U.S. 681, 685 (1988) (sustaining the introduction of evidence of a defendant's previous receipt of allegedly stolen goods in order to show that the defendant's later possession of stolen goods likely took place with knowledge that they were stolen).  See also United States v. Rubio-Estrada, 857 F.2d 845, 847 (1st Cir.1988) (holding that prior bad acts evidence "is admissible to show knowledge and intent.") (internal citations omitted).  As noted above, the evidence in the instant case is clearly probative of a material fact other than the defendant's character.

A district court must perform a two-part inquiry in determining the admissibility of Rule 404(b) evidence. "First, the proffered evidence …must possess some special relevance to a disputed issue in the case. [Second,] the evidence, although relevant, nonetheless must be rejected if its likely prejudicial impact substantially outweighs its likely probative worth." United States v. Sebaggala, 256 F.3d 59, 67 (1st Cir. 2001) (internal citations omitted). Evidence is admissible under Rule 404(b), even if a juror might, contrary to the court's instructions, also make other inferences that involve character.  "Evidence survives an absolute

ban as long as at least one permissible inference is possible" and "the fact that a juror might also make other inferences that do involve character is beside the point." United States v. Ferrer-Cruz, 899 F.2d 135, 138 (1st Cir. 1990) .

Under First Circuit case law, evidence is admissible to show knowledge, intent or absence of mistake or accident even if the defendant does not specifically contest any one of these factors:

> In other words, we are faced with the following question: May other acts evidence be admitted under Rule 404(b) when the defendant's only defense is a general denial of the crime charged in the indictment? We hold that other acts evidence may be admitted when it is probative of an issue other than character even when the defense is a general denial of the charges.

United States v. Oppon, 863 F.2d 141, 147 (1st Cir. 1988).

According to the First Circuit, introduction of a defendant's prior bad acts is also permissible as evidence of a "common scheme or plan." See United States v. Gonzalez-Sanchez, 825 F.2d 572, 581-83 (1st Cir. 1987) (affirming the admissibility of other fires for the purpose of showing a common scheme to defraud using arson of property).  In evaluating the probative value of a prior bad act offered to prove a "common scheme or plan," a court must consider two factors: (1) "the remoteness in time of the other act" and (2) "the degree of resemblance to the crime charged." United States v. Decicco, 370 F.3d 206, 212-13 (1st Cir. 2004) (holding that evidence of a previous warehouse fire was probative of a common scheme or plan and "the district court erred in not considering whether the [fire] was relevant to a common scheme or plan to burn [the same warehouse] for the insurance proceeds."). Here, there can be no dispute that evidence of the Atlanta crimes was close in time – defendant reconstituted his fraudulent

scheme in Boston within two weeks of fleeing Atlanta.[2] Similarly, there is a very close "degree of resemblance to the charged crime." Indeed, defendant's criminal conduct and statements in Atlanta are virtually identical to his criminal conduct and statements in Boston.

Evidence of defendant's Atlanta conduct may also be offered to show that the defendant's *modus operandi*. See, United States v. Lau, 828 F.2d 871, 873-74 (1st Cir. 1987) (sustaining district court's admission of prior similar smuggling schemes involving same individuals); Woodruff v. Lane, 818 F.2d 1369 (7th Cir. 1987) (holding that evidence of the defendant's commission of similar crimes in a manner nearly identical to the means employed in the charged offense may be introduced to show the defendant's *modus operandi*, which relates to his or her plan for the commission of the offense). The nearly identical nature of the Atlanta offenses combined with the similarity of the manner of his arrest in Atlanta, clearly demonstrate that the scheme as charged in the indictment is the *modus operandi* of the defendant.

Defendant's criminal conduct in Atlanta, his arrest there, and his flight from justice, as well as his statements about these subjects, are all relevant to prove the defendant's motive, opportunity, intent, plan, knowledge, identity and absence of mistake or accident. Consequently, the probative value of this evidence is quite large. By contrast, because the Atlanta crimes are close in time and virtually identical in conduct to the crimes with which the defendant is charged in the instant indictment, any unfair prejudice to the defendant will be minimal (after all, the jury will already hear that the defendant is involved in each of these types of acts).

---

[2] The Indictment charges the defendant with a scheme to defraud that began on or about July 16, 2004 -- two weeks after he fled Atlanta. Indictment, Paragraph 2.

**CONCLUSION**

For all of these reason, evidence regarding defendant's Atlanta criminal conduct, his arrest there, and his flight from justice should be admitted in the upcoming trial.

                                  Respectfully submitted,

                                  MICHAEL J. SULLIVAN
                                  United States Attorney

By:    /s/ Seth P. Berman
        SETH P. BERMAN
        Assistant U.S. Attorney

Dated:      November 29, 2005