UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.    ) | Crim. No. 05-cr-10004 PBS |
| ) | |
| OLEKSIY SHARAPKA ) | |
|    Defendant. ) | |

**GOVERNMENT'S RESPONSE TO
DEFENDANT'S OBJECTIONS TO THE PRESENTENCE REPORT**

The United States, by and through its attorneys, United States Attorney Michael J. Sullivan and Assistant United States Attorney Seth P. Berman, provides the following response to Defendant Oleksiy Sharapka's objections to the pre-sentence report.

1. Paragraph 11: After reviewing defendant's responses and reevaluating the information from Georgia, the government has recalculated the total loss from Georgia to be $397,187. This calculation is based on the following information, which will be provided to U.S. Probation ("Probation") under separate cover, and will be available for defendant's inspection:

    1) A list of 40 credit card numbers found on Mr. Sharapka's computer in Atlanta. At 500 per card, the total value of these cards is $20,000. These credit cards are different from the credit cards he possessed in the other categories detailed herein;

    2) A report from Postal Inspector Murray in Atlanta, detailing the physical property recovered as a result of their investigation. The total value of this property is $24,946. These credit cards are different from the credit cards he possessed in the other categories

        detailed herein;

3)     A spreadsheet detailing the 122 credit cards and credit card numbers, of which two are duplicated, leading to 120 unique credit cards numbers found in Sharapka' custody at the time of his arrest in Atlanta. At 500 per card, the total value of these cards is $60,000. These credit cards are different from the credit cards he possessed in the other categories detailed herein; and

4)     A spreadsheet prepared by American Express detailing actual and attempted loss on credit cards linked to Sharapka through the presence in his custody of the names or credit card numbers of the card holder or card. The total actual and intended loss associated with this conduct is $312,241. These credit cards are different from the credit cards he possessed in the other categories detailed herein.

2.     Paragraph 13: The date on which Mr. Sharapka began to use the Mail Boxes Etc. in question is not known. However, it was clearly before October 28, 2004. A document found on Sharapka's computer includes the instruction "get driving directions [to] Mail Boxes Etc. 304 Newbury Street, Boston, Massachusetts." According to the computer forensics done by the FBI and the United States Secret Service, this document was last modified on August 9, 2004. Moreover, in Sharapka's apartment, agents found an invoice, dated 10/21/04 and shipped to the same Mail Boxes Etc. address. These documents will be provided to Probation under separate cover, and will be available for defendant's inspection.

3. Paragraph 15: A spreadsheet detailing the value of all the property found in Sharapka's home in Boston will be provided to Probation under separate cover, and will be available for defendant's inspection. The values were derived either from invoices found in the apartment, or web searches seeking the value of the products online. Copies of the invoices or web pages detailing these values will also be provided to Probation under separate cover, and will be available for defendant's inspection. Based on this information, the government maintains that the value of the fraudulently obtained property found in Sharapka home in Boston is $88,716.

4. Paragraph 16: Defendant claims that "he did not have any further information which would allow him to assume any other identities forming the charge of identity theft" other than the two for which he plead guilty. This is incorrect. Photocopies of 30 counterfeit drivers license found in Sharapka's apartment, along with other forms of identification in the names of other individuals, will be provided to Probation under separate cover, and will be available for defendant's inspection. In addition, Sharpka's computer contained the names, dates of birth, social security numbers and other identifying information of many more individuals.

5. Paragraph 17: After reviewing defendant's responses and reevaluating the information from his Boston computer, the government has recalculated the total losses detailed in paragraph 17 and determined that a better estimate is $576,898. This calculation is based on the following information, which will be provided to Probation under separate cover, and will be available for defendant's inspection:

1) A list of 468 credit cards and bank cards, most with PINs, found on defendant's computer. These cards were recovered from different files from which the $278,714 and $64,184 calculations listed below were recovered. As a result, these appear to be different credit cards from the ones used to make the purchases listed in those categories below. However, these cards numbers found on the computer include the card numbers found on the 59 bank cards with reencoded numbers found in Sharapka Boston apartment and referred to in Paragraph 16 of the PSR. Thus, they should only be counted once. At 500 per card, the total value of these cards is $234,000;

2) FBI 302 detailing files on defendant's computer referencing the purchase or shipment of merchandise worth $278,714, along with a printout of the relevant files from Sharapka's computer.

3) FBI 302 detailing $64,184 of credit cards with known credit limits found on Sharapka's computer, along with a printout of the relevant files from Sharapka's computer.

6. Paragraphs 18 and 19: The evidence on defendant's computer, combined with the statements he made to police, clearly indicate that he himself placed some of the orders.

7. Paragraph 22: The government maintains that the third point for acceptance is not appropriate as defendant agreed to plead guilty less than one week before the scheduled trial in this matter, long after the government had invested considerable resources to prepare for trial.

8. Paragraph 32: The access devices are detailed in the responses to the objections detailed above. Defendant's claim that many of these are "non-functioning" is irrelevant. Defendant acquired these credit card numbers with the intent of using them. Even if it is true that defendant was frustrated in his attempts to use these credit card or bank numbers, this does not alter the intended loss calculation.

9. Paragraph 33: The "actual victims" of defendant's action are not just the issuing banks, but also the vendors, who are required to refund a portion of the money that they obtained through Sharapka's fraudulent behavior. Moreover, the identity fraud victims also suffer foreseeable, actual loss, as their credit rating suffers, increasing their cost of borrowing, forcing them to spend time and money attempting to repair their credit ratings. The complicated and comprehensive nature of Sharapka's conduct makes the exact number of "victims" of Sharapka's fraud, as that term is defined in the U.S. Sentencing Guidelines, unknowable. However, given the scope of Sharapka's activity, it is clear that there are well more than fifty such victims.

10. Paragraph 24, 28 and 40: The government does not agree that the application of these guideline provisions results in a "bloated" guideline level.

11. Paragraph 41, 42 and 43: The government does not agree that the guideline level ought to decrease.

12. Pargraph 62: The government has no knowledge of the defendant's proposed addition to this paragraph.

13. Paragraph 68: For the reasons stated above, the government continues to believe that Sharapka himself made some of the fraudulent purchases.

14.     The government believes that restitution of $446,869 should be ordered.

In conclusion, after reviewing the defendant's responses to the Presentence Report, and reexamining the data available to the government regarding loss, the government has recalculated the total loss in this case as being $1,082,801.

                                                    Respectfully Submitted,

                                                    MICHAEL J. SULLIVAN  
                                                    United States Attorney  
                                                    By:

                                                    <u>/s/ Seth P. Berman</u>  
                                                    SETH P. BERMAN  
                                                     Assistant U.S. Attorney  
                                                     (617) 748-3385

September 1, 2006