UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 05-10004-PBS |
| | ) | |
| OLEKSIY SHARAPKA | ) | |

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

Defendant submits this memorandum to assist the Court at sentencing. Mr. Sharapka asks the Court to impose a total sentence of 28 months, no fine, a one year period of supervised release, and a $1,300 special assessment fee.

    A.    <u>Advisory Guidelines Calculation</u>

The defendant provides the following analysis based on his objections to the first draft of the pre-sentence report (PSR), the final report was not available at the time this Memorandum was created. Per Guideline §2B1.1 Mr. Sharapka begins at base offense level 7; as to specific offense characteristics: he takes responsibility for between $70,000 and $120,000 in loss (8 level increase); receiving stolen property while being in the business of receiving and selling stolen property (2 level increase); commission of offense while on pre-trial release (3 level increase); obstruction of justice (2 level increase); minimal role (4 level decrease) leading to an adjusted offense level of 18, a 3

level reduction for acceptance of responsibility places the total offense level at 15.  He is a Criminal History Category (CHC) I.

Mr. Sharapka disagrees with the Governments loss calculations reflected in the PSR in that: under specific offense characteristics he estimates a much lower amount of loss (8 level rather than 14 level increase); amount of victims is 4 not over 50 in that only 4 credit card companies suffered an actual loss (zero increase rather than 4 level increase); relocation of scheme and possession of device making equipment should not be counted (a 2 level increase for each) because under §2B1.6 Aggravated Identity Theft Commentary note 2 of that Guideline states "If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession or use of a means of identification when determining the sentence for the underlying offense.  A sentence under this guideline accounts for this factor for the underlying offense of conviction, including… [Relevant conduct]". Mr. Sharapaka would argue any type of victim enhancement would also be covered by this Commentary note. Sharapka believes he is entitled to a 4 level reduction based on his minimal role in the offense in that his role was to pick up and re-ship packages as instructed online.  Sharapka believes he deserves a 3 level not just 2 level reduction for his acceptance of responsibility; a superceding information was presented to him and the Court on April 11, 2006, containing additional charges, a trial date was scheduled for thirty days later.  The defendant was left with a thirty day window in deciding whether to plead or face trial on the new 13 count information. Mr. Sharapka's studying the new superceding information which contains new counts that carry a two

year minimum mandatory sentence prior to pleading guilty was completely reasonable.
Everyone appears to agree that his Criminal History Category (CHC) is a level I.


   (1) Mr. Sharapka's minimal role in the offense  and his Disagreement as to loss
       amount

       While studying for his doctorate degree in Atlanta Mr. Sharapka opened his first

Mail Box Etc. account on April 21, 2004 to receive merchandise which he collected then

passed on to another participant in the scheme who re-shipped these items. In exchange

Mr. Sharapka would receive a small fee amounting at times to 20% of the profit of the

reshipped merchandise.  He learned of this scheme through the internet and began to

meet other foreign exchange students who also received packages to be shipped.  After

receiving several packages in Atlanta he opened other Mail Box Etc. accounts.  Upon his

arrest in Atlanta on May 17, 2004 he estimates he had opened around 5 Mail Box Etc.

accounts, some of which had not been used yet, and received about a dozen packages.  In

Atlanta he was living with a couple which had been involved in this type of scheme for

years.  It is in this home that the Government seized different computers and merchandise

which is attributed to Mr. Sharapka.  He estimates the value of the merchandise found in

the residence to be $20,000. After Mr. Sharapka's release on conditions he fled to

Massachusetts.  Mr. Sharapka again resorted to receiving packages. In Boston he met

several other exchange students from Eastern Europe involved in the same activity.  The

other students provided Mr. Sharapka with various items they could not use upon their

return to Europe such as forms of identification, temporary bank cards and pre-paid cell

phones.  Mr. Sharapka was able to take over the Mail Box Etc. accounts opened by these

individuals to receive packages. Sharapka never purchased any items to be mailed or accessed any bank accounts. Sharapka provided an address online to his "employer" where items could be shipped and was sent tracking information in return as to the item to expect. Once items were received in Massachusetts he then would reship them to an address in New York. This scheme consisted of an "employer" or "recruiter" who would quarterback the operation and coordinate with his "technical support" team while arranging with an independent "receiver" such as Sharapka. The "employer" would arrange for the purchase of an item online and would receive an address from a "receiver" where to send it. Mr. Sharapka would then receive information as to what to expect and would then pick up the package and pass it along to someone else or re-ship the item himself. Mr. Sharapka estimates the value of merchandise seized from his Massachusetts apartment at $45,000. Other items found in Massachusetts were a computer with a read/write scanning device, 59 white plastic cards, 49 of which contained some type of numerical encoding, 19 temporary debit cards to empty bank accounts left by other foreign exchange students for Mr. Sharapka, and $14,000 in cash. The total merchandise recovered from Georgia and Massachusetts is estimated at $65,000, an estimated $35,000 can be attributed to attempted shipments which were unsuccessful. This places the amount of loss between $70,000 and $120,000 (8 level enhancement). Mr. Sharapka cooperated with the Government through several lengthy proffers and detailed the specifics of his involvement and what he understood of the entire operation.

      The Governments calculations place loss amount between $400,000 and 1 million based on large amounts of alleged access device numbers on different computers and

$278,000 worth of purchasing records on the computer seized in Massachusetts. Multiple computers were seized in Atlanta in a home where others were involved in the same type of activity. Specifics as to which computer in Atlanta the alleged credit card numbers were found have not been provided. The Government to this point has provided a general list of different account numbers found on the computers in Atlanta and Massachusetts as well as the contents of 3 computer files from the Massachusetts computer which contain information detailing large amounts of shipments. Mr. Sharapka believes the majority of these access devices attributed to him were either not found on his computer or have been counted from evidence of shipping information and the assumption that an access device must be related to each of the many shipments found on the computer. A large amount of the information related to prior deliveries on the Massachusetts computer are shipments received by others which Mr. Sharapka had nothing to do with. This information was received from others or downloaded from numerous websites available to those acting as "receivers". The purpose of accumulating information about deliveries to others is to remain aware of who was receiving packages where so that their schemes would not overlap. The Government would like the Court to hold Mr. Sharapka responsible for large amounts of alleged access devices and shipment records found on several different computers. The Governments last projections were that Mr. Sharapka should be held responsible for a total loss of $1,082,801. Mr. Sharapka does not deny being in possession of some access devices or having access devices on his computer, but is adamant that he is not responsible for such a large number of access devices or shipments. The Government has failed to establish that the large series of numbers it attributes to Mr. Sharapka are truly access devices, some in fact are tracking numbers,

furthermore files recovered from all of the computers have been grouped together and presented to the defendant in summary fashion without demonstrating the origin of where these alleged access devices were recovered and his ties to them.

      (a) Mr. Sharapka played a minimal role in the offense pursuant to U.S.S.G. §3B1.2 (a).

      Mr. Sharapka must show his conduct was "substantially less culpable than the average participant". The defendant relies on the offense conduct presented above to establish that his conduct meets the criteria required for a minimal role adjustment. "Under this provision, the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." Mr. Sharapka acted as a "receiver" for shipments. His profit for the approximately $60,000 worth of merchandise he received was around $12,000. It was others who organized this operation, obtained access devices and purchased the merchandise. The defendant's role was to provide one element of the scheme: an address to receive stolen merchandise then to hand it over to another person or mail it to another address. To be considered minimal the defendant's conduct must be shown to be of a peripheral player and less culpable of those participating in similar crimes. See United States v. Teeter, 257 F.3d 14 (1st Cir. 2001). The defendant's conduct can be differentiated from other defendants in that he was unaware of the scope or size of his "employer's" scheme. He is less culpable than others who obtain credit cards, order goods, then receive and sell the merchandise. The defendant in this case did not know the scope of the organization or its organizers, his profit of $12,000 compared to $1 Million dollars in loss the Government wishes to attribute to him demonstrates the huge

difference in his role compared to the scope of the organization.  Mr. Sharapka is less

culpable "than most other miscreants convicted of comparable crimes". <u>United States v.</u>

<u>Teeter</u>, supra., 30-31. The defendant has shown by preponderance of the evidence that he

deserves a minimal role adjustment, or at the very least a minor role adjustment since he

is substantially less culpable through his limited participation in the offense.

 

      B.      <u>Grounds for Downward Departure</u>

      1.      <u>The Applicable Advisory Guideline Amount of Loss Overstates the Defendant's Culpability and Causes Multiple Overlapping Enhancements</u>

Pursuant to USSG § 5K2.0, the Court should depart downward because the

applicable loss calculation figure bears no resemblance to the actual pecuniary harm

caused to the victims.  Under § 5K2.0, a court may depart downward if it identifies a fact

not adequately addressed by the United States Sentencing Commission that takes the case

out of the Guideline's heartland.  <u>See</u> <u>Koon v. United States</u>, 518 U.S. 81, 95-96 (1996).

This case is outside the Guideline's heartland. Under USSG § 2B1.1, Appl. Note 19(C),

the Court may consider whether the amount of loss overstates the defendant's culpability.

*See, e.g., United States v. Gregorio,* 956 F.2d 341 (1st Cir. 1992) (downturn in economy

responsible for large portion of degree of loss so departure appropriate); *United States v.*

*Graham,* 146 F. 3d 6 (1st Cir. 1998) (lower loss attributed to similarly situated defendants

calls for departure); *United States v. Mueffelman,* 400 F. Supp.2d 368 (1st Cir. 2005)

(good faith efforts to avoid losses suggests loss amount not an appropriate measure of

culpability); *United States v. Lauersen,* 348 F.3d 329 (2d Cir. 2003) (multiple

adjustments create unwarranted guideline level overstating seriousness of offense).

*United States v. Redemann,* 295 F. Supp. 2d 887 (E.D. Wis. 2003) (departure warranted based on $2.48 million loss substantially exceeding any fair measure of defendants culpability).

The inappropriateness of the enhancement here stems from the fact that Mr. Sharapka received a small fee for providing a place where stolen merchandise could be shipped and re-delivered to another person for shipment or as evidenced towards the end of the scheme repackage and re-ship it himself to another location. Mr. Sharapka never ordered merchandise himself nor obtained funds through an access device. The loss amount in this case is driven by computer files which contain a large amount of shipment information which the Government translates into "access devices" all of which are attributed to the defendant. As Mr. Sharapka has explained above in his calculations of the true loss amount there appears to be a big difference between his actual role and his profits compared to the loss amount applicable through the advisory Guidelines. *See, e.g., United States v. Costello,* 16 F. Supp 2d 36, (D. Mass 1998) (departure from level 24 to 15 appropriate where loss figure substantially overstated defendants culpability, defendant did not initiate plan to steal and received less than 1% of profit.)

Post-*Booker* the purposes of sentencing as laid out in 18 U.S.C. § 3553(a) call for the Court to put the amount of loss in context with the purposes of sentencing which include just punishment, rehabilitation and the need to provide restitution to any victims. The relatively small amount of actual loss and the role of Mr. Sharapka placed in context with the loss amount is disproportionate and calls for a departure from the advisory Guidelines.

Mr. Sharapka has several enhancements which account for identical conduct creating an unfair cumulative effect which is to a degree that one can argue was not considered by the Sentencing Commission in its requiring all enhancements to be aggregated.  The 2nd Circuit Court of Appeals has taken such a position in *United States v. Lauersen*, *Id.* (2d Cir. 2003), a departure was allowed due to the disproportionate Guideline level created by a combination of enhancements added on to the applicable loss amount enhancement.  Mr. Sharapka has in the 1st draft of the PSR 6 separate enhancements not including the enhancement for loss amount which when totaled create a 15 level increase to whatever loss amount enhancement the Court deems appropriate. The enhancements listed in the 1st draft of the PSR are: 1) 50 or more victims- 4 levels, 2) Business of receiving and selling stolen property- 2 levels, 3) Relocation of scheme- 2 levels, 4) Device making equipment- 2 levels, 5) On release from pre-trial during commission of offense- 3 levels, 6) Obstruction of Justice for flight- 2 levels.    The aggregation of all these enhancements create an advisory Guideline level which is not realistic when considering the purposes of sentencing as laid out in 18 U.S.C. § 3553(a).

C.    Further Mitigating Factors Under Section 3553(a)

After United States v. Booker, 543 U.S. 220 (2005), the courts must take into consideration the sentencing factors outlined in 18 U.S.C. §3553(a).  After determining the advisory guideline level, which is now just a starting point, the Court must then determine whether to impose a lower sentence under 18 U.S.C. §3553(a).  Factors to be considered among others are: "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need to protect the public from further crimes

of the defendant," and "the need… to provide the defendant with needed educational or vocational training".    The sentence should be "sufficient but not greater than necessary to comply with the purposes set forth in" 18 U.S.C. §3553(a) (2).

      1.  <u>History and Characteristics of the Defendant</u>

Mr. Sharapka is 26, single and a native of Kiev, Ukraine. His younger sister, Katerina, and his parents Oleksander and Tamara all live in Kiev and do their best to stay in contact with him.  Mr. Sharapka's parents were both engineers and raised a loving family with a moderate income. Mr. Sharapka excelled in school obtaining a Bachelors degree in Economics from the "National University of "Kiev-Mohyla Academy" where he finished at the top of his class; he received offers to continue his studies in Doctoral programs at University's in the United States.  He accepted a scholarship at Georgia State University of Atlanta where he was pursuing a doctorate in Economics.  It was at this point that he began to supplement his income by re-shipping packages. His curriculum vitae as well as letters from his family and professors attesting to Mr. Sharapka's true character are attached hereto as exhibit 1.   It is evident that up to this point in his life he had led an exemplary life, excelling in academics making his parents and professors proud while preparing for a bright future. The pattern of behavior which led him to re-ship goods is totally out of character, it was a foolish way to help pay bills while studying in the United States. His arrest has taken a physical toll on his Father who has been unable to work and is interned in the hospital.  (Medical documents related to his Father from the Ukraine are attached hereto as exhibit 2.)  Without his Father working the family is under great financial strain which Mr. Sharapka holds himself directly

responsible for.  It is his hope to return to Kiev as soon as possible to see his Father prior to his condition worsening and to provide for his elderly parents and sister as they are currently struggling to get by.


2.  Mr. Sharapka's Cooperation

Sharapka both in Atlanta and Boston immediately made full admissions to the Government as to his role in the scheme and the manner in which he became involved. Sharapka had several long proffer sessions with agents explaining and helping them to understand the manner in which these schemes operated.  He was placed on the internet by the Government in hopes that he could help find the sources or "employers" who were hiring "re-shippers".  He helped the agents find websites and the manner in which overseas "employers" recruit "receivers".  Mr. Sharapka provided the agents with the address of where he sent goods in New York   This location has since been raided by federal agents and shut down.  He is not receiving credit through a 5K1.1.  This extensive cooperation and acceptance of responsibility can be taken into consideration by the Court in the hopes that Sharapka may have assisted in preventing future loss to others.


3. Sharapka's Alien Status

"Fast Track"  The government is allowed to make a motion pursuant to U. S. S. G. § 5K3.1 reducing an offense level up to 4 levels if an "authorized" principal of equal protection would require the application of that kind of Guideline departure to all situated defendants if the goal of eliminating unwarranted disparities is to be met.  There is also the likelihood of a more onerous incarceration status as a result of his alienage as

compared with other inmates.  See United States v. Bakeas, 987 F. Supp. 44, 48-49 (D.C. Mass. 1997).  Mr. Sharapka has also spent the last 24 month of his pre-trial incarceration in the Plymouth House of Corrections rather than a federal facility.


Conclusion

Lastly, Mr. Sharapka respectfully submits that even if any one of he above reasons do not provide a sufficient ground for the sentence requested here, the totality of circumstances justify the "reasonable sentence" requested.  Cf. United States v. Iaconetti, 59 F. Supp. 2d 139 (D. C. Mass 1999).




Dated: October 17, 2006                    Respectfully submitted,
                                           Oleksiy Sharapka,
                                           By his attorney,

                                           /S/ Frank Fernandez
                                           Francisco Fernandez
                                           Denner Pellegrino LLP
                                           4 Longfellow Place, 35th Floor
                                           Boston, MA  02114
                                           617-227-2800




Certificate of Service

I certify that a copy of this Memorandum has this day been forwarded to each party by forwarding via the Electronic Court Filing System (ECF) and will mailed to any necessary party who is not a subscriber to the ECF System.


Dated: October 17, 2006                    /S/ Frank Fernandez
                                           Frank Fernandez

# EXHIBIT 1

Your Honor,

I would like to say and express a few words and thoughts on behalf of my son. Throughout my son's life he has made me extremely proud on many separate occasions. Although this may be not one of them, I do not believe that it takes away all the good he was able to accomplish to this point.

He changed a lot after his first stay in the USA. He became more independent. He talked a lot about his career and future plans, and how many new horizons will open for him after graduation from the western university. We were happy to support his dreams, thinking that at least he will be able to get something from this life and get away from the greem reality of existence in our country.

Before his current unfortunate situation he was capable of doing almost no wrong. He has established himself as a very responsible and reliable person. He possessed strong self discipline and sense of purpose. We never had to worry about him being involved in anything remotely close to the situation he now finds himself in.

My son had a long-term plans for his life, and I still don't completely understand the reasons behind what made him trade an assured and successful career on something what lead him to his current situation and all this troubles. It is possible that he was carried away and made the biggest mistake in his life.

Anyway, it is not just him that the situation affects. It reflects badly on all of us. Nobody in the family ever had any run ins with the law, and it is very embarrassing to acknowledge that our only son who was brought up with high morals and standards, who was taught right from wrong, has ended up in prison. I will now forever question my own ability to raise my children. The emotional drain from this situation has taken its toll on our family. We are out of touch with our son, the correspondence is very inefficient, more often than not the letters get lost and disappear. The legal cost associated with this whole situation had a devastating impact on our family's finances, and it will take us years to recover. I understand that it can't play a great role in your judgement, but it will most assuredly play a large role in my son's future judgements.

After talking with my son's attorneys and some other sources of information we came to the firm understanding that you are very fair in what you do, and that our son can expect to be judged fairly. In our prayers we will be with him on the day of his sentencing. As my wife noted it is impossible for us to be there, but if could- without a question- we would be there. We hope you will not look negatively at this fact.


Sincerely,

Oleksandr Sharapka

Your Honour,

I am writing to you out of deep concern for my son with an understanding for the reason he stands before you. I do not try to minimize any of the actions of my son's behavior. I write simply for the care and love of his well-being, and so that you can get a better picture of his person. I understand that his behavior might have been criminal, but I can assure you that the man is not. He wasn't raised by either me or his father, or the whole of this family to conduct himself in such a way. Although my son is not without faults, he is not a criminal by the definition of the word. My sincere understanding is that his actions were just a pile on of mistakes made by a young desperate person under an extreme duress. I do not mean to imply that he was not wrong in his course of actions, because we both know that he was.

But where he stands now is a very difficult crossroads for everyone involved. For us, his mother and father, it is the well being and the future of our son. For our son it is not only his future, both academically and professionally, but his present reality as well. And the devided difficulty for you is in the impartiality of the decision you must make, weighting both justice and a man's life.

For the dilemma is a most difficult one to say the least, but it is through all the knowledge acquired on our behalf, it seems that you are fair in what you do.

And our hope is that you will be so here.

Our son is an extremely good student, he has made a milestones in our country academically and he has made them in yours as well. Our countries run on different parallel lines socially, and the time he has already lost put him in the deep disadvantage scholastically with regards of not only finishing his doctorate but with competing for the professional jobs in line with his education. Not talking about 16 years he has already devoted to his education and knowledge and skills he has acquired, and which are constantly decaying without him being able to apply and improve them. In this country there is a propensity for the hiring institutions to seek those who finish their higher education the fastest and with the greatest results. The hiring institutions without question seek the youngest and the best.

Your Honour, I would like to take this opportunity to express to you that he is not only our only son, but that we love him dearly and miss him extremely. We have not seen him in about 3 years and we are hoping to see him sometime soon. He has missed so much of our personal family matters, obviously to his own fault, but he has missed his sister's graduation from the university, his father was recently very sick, he has missed out 30th marriage anniversary. Also he has missed numerous other family events which need not be mentioned.

We understand that you must do your job, our hope is that you will weight these factors when you are to impose the sentence on our son. We hope you will take into account the fact that he can never and will never be able to return to your country. My son knows and now understands how terrible of a mistake he has made, he is paying for it on many different levels of his reality.

Unfortunately we are not going to be present on one of the most important days of our son's life, but because of his father sickness and financial reasons and the enormous logistical issues of all of us being present in your country and in your courtroom, we will not be capable of attending. We sincerely pray that this will not have a negative affect in the court's eyes. We would love nothing more than to support our son, but regretably our presence can not be.

I can assure you that whatever the outcome of this regretable situation, once we do have our son back into the family fold, all ways and means will be set forth to set our son on his proper track. I believe with my heart he has not only learned so much from these mistakes, but I believe with the mother's heart that he will never be so foolish again. Our prayer is that he will be capable of coming home sometime in the relatively close future. And out collective hope is that you will answer it.

Sincerely,

Tamara Sharapka

Your Honor,

My name is Katerina and I am Oleksiy's sister/ I'm writing to you because I want you to know how good a person my brother always was, and I am sure he still is.

He is my older brother and is always an example for me. He was the best pupil in his school and the best student in his university on his faculty, which I have entered later also. It is the best university in Ukraine and the most prestigious faculty in our university. I knew it would be very difficult for me to study there because he was the best student and everybody new him. Professors and lecturers always asked about him and always began the studies with words about how good he was and how they hoped I would be the same as him.

Other students used to come and ask if I was really his sister. They said I was lucky and I'm really lucky to be his sister, to have such a brother. I'm proud of him and always will be.

I don't understand everything that has happened with my brother, but I think that it is a terrible mistake that he is in prison now. He is such a good person.

He is always the best in everything he does: studying, sports. People always wanted to be like him, they were proud to say they know him or that they were his friends. They respected him.

There are still "legends" in our university about him, about his achievements, how he won many grants and scholarships, and how he was admitted to more than 30 universities all over the world. He was always the best, but at the same time he was always surrounded by people, because he was humane and kind and always ready to help.

In out family he was one whom parents always pointed out as an example. They were extremely proud of him and he had never let them down before. He always helped me to find my way with my life. Oleksiy is not just my brother, he is my best friend and the closest person in the world.

My mother is devastated by the situation. She let her son go to the USA to study for the Ph.D. degree, but she will get him back called a swindler, with his career destroyed, him being hurt physically and psychologically after all these years in prison.

It is very difficult for me to see my parents being wasted away by worry about him. They started to say they won't survive till the time he will be back. I hope that you have never been in a situation where you were capable of loosing certain people dear to you.

Your Honor, I am speaking not only for myself but also for Oleksiy's fiancé, all his friends, people who need Oleksiy in their lives, because I know no one who thinks badly of my brother!

I do really hope that this terrible dream will be over soon, and Oleksiy will come back to people who really care for him, and who will never think about him as a criminal!

Believe me he is not and never will be!

Sincerely,

Katerina Sharapka

LETTER OF RECOMMENDATION

December 27, 2002

To whom it may concern,

I have known Mr. Sharapka since 1998 as a student of the National University of Kiev-Mohyla Academy. He was a student of mine in Macroeconomics (1998, 92/Excellent) and worked as an assistant in my office.

As I got acquainted with Oleksiy on his second year of study I was impressed by Oleksiy's serious attitude towards obtaining additional knowledge. He was not only one of my best students (his rating was third among 64 students of my course), but also a person of strong motivation, diligent and ambitious. His independent research work on monetary policy was declared the best student research work that year, therefore I believe Oleksiy will successfully carry out any required economic research.

Oleksiy has excellent analyzing skills and strong command of economic theory and financial analysis. In my opinion Oleksiy has great potential to become a prominent leader in future Ukraine. This young man has exceptional leadership abilities. And I think that a good Western-standard university can provide him with perfect foundation for solving economic problems , especially with the high level of risk and uncertainty typical to Ukrainian economy , and further business and research work in any economic field. These will for sure enrich him and thus will give him the opportunity to spread this experience among his Ukrainian colleagues. That is why I am deeply convinced Oleksiy will bring much benefit for Ukraine in any area.

I'm sure Oleksiy will do his best if given the opportunity to study at Ph.D. level in the USA, because strong competition provide a spur to his studies. Oleksiy turned out to be a very versatile and responsible person when it came to the design of the program, to the assistance to other participants and to generating and developing new ideas. I have no trace of doubt that he will be an outstanding graduate student, because of his professional experience, analytical abilities, sense of purpose, determination, leadership, friendliness and optimism, that he will be very much involved in social life at any university and will enrich it by his unique individuality.

**Name and Title:** Professor Yuriy Bazhal, Dr. of Economics, Dean of the Faculty of Economics.

**Place of Employment and Academic Affiliation:** The University of Kiev-Mohyla Academy, Kiev, Ukraine, 04070

**Work Telephone:** (380 44) 416-60-33    E-mail: bazhal@eerc.kiev.ua

**Signature:** _____    **Date:** 12.27.2002

## LETTER OF RECOMMENDATION

*To the office of Graduate Admissions,*

I am a senior associate professor in microeconomic analysis at the National University of "Kiev-Mohyla Academy". I have known Mr. Oleksiy Sharapka personally for four years (since 1999) in the capacity of my student, and I can highly recommend him for the following reasons.

First, I taught him Microeconomics, in which he participated over and above all of his regular course work and in which he did exceptionally well (his grade was 91 - excellent). He had a very high degree of seriousness and maturity. As undergraduate student he applied himself to his academic work with a genuine sense of responsibility and sincerety. For his good academic performance 98-99 he was awarded the university grant named after P.Zanevchik (Canada). Also during all years of his studying in our university he is among top-ten students with the best study results.

Second, Oleksiy has outstanding skills in financial analysis. Usually his independent research works are the best in his course. Few years ago his knowledge made great impression upon Joyce Gleason, visiting professor of Economics from Nebraska Wesleyan University, and she recommended him for position of analyst in the ukrainian subsidiary of swiss-american consulting company "Prime Capital Group". As a result he recieved a three-month internship in this company. I believe this was a very useful experience for this young man.

Third, Oleksiy is creative, adaptable, cooperative and reliable student. He is a very broadminded person and has an excellent understanding of economics. He is interested in finances, international trade, macro- and microeconomics, econometrics. He has paid a lot of his attention to internships and independent researches. Up-to-date society requires such experts and Oleksiy is a man who put his talents to good use. I remember he expressed willingness to serve for ukrainian economy growth. He is a man of character, so I have sure grounds for believing that all his goals will be reached.

Fourth, I remember Oleksiy as always well prepared for each Microeconomics session, and his active participation in several projects, additional reading and independent research gave him a broad perspective and an open-minded approach to problem solving. He is very much motivated and hardworking. In my opinion, his outgoing personality and motivation will help Oleksiy to succeed in both private industry and academic career.

Fifth, as some tasks required extensive use of computer applications I was impressed by his superior knowledge of computers. Also he has a very good command of the English and few other European languages, and is very interested in mastering his knowledge of them.

Sixth, Oleksiy was also a member of the Youth Alternative Project that was carried out at the Verkhovna Rada of Ukraine (Ukrainian Parliament). While working for the Committee of Finance and Banking of the Verkhovna Rada he has written a research on forming of stock markets in Ukraine and Eastern European Countries, that was published in the Youth Alternative Newsletter. He also prepared independent researches on economic reforms in Ukraine, pension systems, foreign investments in Ukraine and impacts of immigration in Ukraine as a member of Students Scientific Society. Oleksiy was always willing to convey experience, skills and thoughts he absorbed from his internships and extracurricular and volunteer activities to other students of the class.

Finally, I knew him as a good sportsman and member of the university soccer team. As Oleksiy is also very sociable and helpful I notice him to get on easily with any person. I think that Oleksiy is an excellent candidate for entering graduate degree studies and I strongly recommend him for acceptance.

*Sincerely,*

Ms. Larisa Krasnikova,
Professor of economics, Economics education and research consortium (EERC),
The National University of "Kiev-Mohyla Academy"
10 Voloska St., office 410
Kiev, Ukraine - 04070
Tel.: (38-044) 239-2494,
Fax: (38-044) 239-2490
E-mail: krasn@eerc.kiev.ua

Date: 12.14.2002

Dear Admission Committee,

This is a letter of recommendation for Oleksiy Sharapka, who is applying for admission into your graduate program in Economics.

I have known Mr. Oleksiy Sharapka for five years. I taught him in several classes and supervised his thesis during last two years of his study in the NaUKMa:

Economics, 1998, 91/Excellent;

Principles of Management,1999, 91/Excellent;

Term Paper, 1998, 95/Excellent;

Term Paper, 2000, 93/Excellent.

With great pleasure I would like to support the efforts of one of my favourite students in his application to your department. I have known Oleksiy Sharapka since 1998, when I began to supervise his first thesis. Oleksiy put through his research and term papers with excellence. During this years he focused his attention upon the pressing questions for Ukraine – valuation of enterprises and property, privatisation policy, foreign investments, Ukrainian stock market, monetary policy. But his greatest achievements are in the field of financial analysis of enterprise. Using European and American theories of valuating businesses he offered his own new twelve methods modified for Ukrainian economic environment.

As a future economist Oleksiy is adequate to modern professional requirements. From my experience I knew that he is a purposeful person suitable to be a leader in any activity he would be involved. Studying in a western university Oleksiy will gain more knowledge of free market economy, experience western methods of education. That means Oleksiy will be able to contribute much more to his academic or business career if he pursues his education in the USA. He also easily communicated his thoughts, so I believe he has certain pedagogic talent, which may be enhanced in future.

I think that his potential and desire to learn will help him to achieve excellent academic results. Oleksiy is quick and eager to accomplish any task so I believe he will successfully carry out any economic research he may be offered. He has his professional interests in finance, excellent grasp of economic concepts and very strong quantitative skills. In addition he is very amiable young man who should work well with other students and employees. He is a person of exceptional maturity, and strong intellectual ability, industry, and dedication. His achievements are even more impressive when one considers the extraordinarily difficult circumstances in which he has had to live and work. In my view, his potential for successful completion of your program of study is very high, and the prospects for subsequent success in his career very promising.

If you have any questions please do not hesitate to contact me.

Sincerely yours,

Natalya Ivanova,
Associate Professor of Economics

The National University of "Kiev-Mohyla Academy"
10 Voloska Str., Department of Economics, office 411, Kiev, Ukraine, 04070

Tel.: (+380 44) 416-60-42
      (+380 44) 416-60-33

12.21.2002



*МИР ЭЛЕКТРОНИКИ*

Свидетельство НДС № 37431775
№ плательщика НДС 237373426104
р/с № 26001200012529
в Межрайонном отд."Укрсоцбанка" г.Киева
МФО 322056 ОКПО 23737341

компьютеры для дома, серверы, рабочие станции, multimedia станции, принтеры, модемы, сканеры, компьютерные сети,копиры,телефоны,мини-атс

" __1__ " _December_ 2000.

To the Office of Graduate Admissions:

This is a letter of recommendation for <u>Mr. Oleksiy Sharapka</u>, who is applying for admission into your graduate program in Economics. I am the Executive Director of the D-Vision media design agency, which is one of the subsidiary companies of Kray Corp., Kyiv, Ukraine.

I have known Oleksiy Sharapka since June,1999, when I hired him as my personal assistant. The main reasons why I chose him out of several candidates were his excellent academic results and a logical way of thinking he showed at the interview. And I am proud of the fact that Oleksiy has lived up to my expectations.

Oleksiy was responsible for the financial aspects of creating and developing an information system service on the basis of the Internet technologies. He proved his readiness for this kind of challenging work by meeting all deadlines and presenting a really high-quality project. His flexibility in making monthly plans contributed much to the success of the whole working on this system.

Another important feature that help Oleksiy win all his colleagues over was his ability to learn new things in no time. Working with modern technologies he needed not only to make himself familiar with them but to master them thoroughly. Very soon he felt comfortable with the high-end software we were using in our work.

From time to time Oleksiy had to communicate with the clients who were having problems with our services. His knowledge of the subject and his amicable way of settling any problem helped us keep our old clients and get knew.

Taking all aforementioned into consideration I strongly believe that Oleksiy's analytical and leadership abilities, flexibility and strong interpersonal skills will enable him to succeed in any foreign university he will choose.

Sincerely,



Igor O.Mankovsky
Executive Director

June 19, 2000

To Whom It May Concern:

Oleksiy Sharapka has asked me to write a letter recommending him for positions related to the areas of economics and finance. I am very happy to provide an enthusiastic letter of support for him. He was one of the best students among the 70 students in the Money, Banking & Finance course that I taught at National University of Kyiv Mohyla Academy in Spring 2000. The course was taught in English, all of the assignments and essay exams as well as the project report were written in English. He is very fluent and seems to have an excellent grasp of the concepts covered in the course. It should provide him with a good foundation for western practices in the area of banking and finance.

In addition he is a very personable young man who should work well with other employees and your clients.

If you have any concerns or questions, please do not hesitate to contact me at my home address or phone number or email address given below.

Yours sincerely,

Joyce Gleason, Senior Fulbright Scholar
Visiting Professor of Economics

Home University: Nebraska Wesleyan University
5000 St. Paul Avenue
Lincoln, NE 68504
email: jggleason1@aol.com

# Curriculum Vitae
## Oleksiy Sharapka

**Address:**
Layosha Gavro Str, 9-B, apt.66
Kiev, Ukraine, 04211

**Tel.:** 38-044-4100886
**e-mail:** bertteonis@yahoo.com

Nationality: Ukrainian
Date of Birth: May 1, 1980
Marital Status: Single

## Education:

| | |
|---|---|
| 2002 to present | Kiev National Taras Shevchenko University, Faculty of Mechanics and Mathematics, MA in Mathematics, current GPA - 3.85. |
| 1997-2001 | National University of "Kiev-Mohyla Academy", BA (Honours) in Economics, GPA – 4.0. |
| 1987 – 1997 | Math Lyceum of Kiev Polytechnical Institute. |

## Awards:

| | |
|---|---|
| 2001 | University of Guelph. Graduate Teaching Assistantships ($12,300/year). Scholarship and bursary ($5,200). |
| 2001 | University of Carleton. International Entrance Scholarship for academic Excellence ($5,000). $13,138/year teaching/research assistantship. |
| 2001 | University of Manitoba. Graduate Fellowship ($10,000/year). $4,400/year teaching assistantship. |
| 1998-2001 | Presidential scholarship for excellent educational performance, NaUKMA. |
| 1998 | University grant for the best study results named after P.Zanevchyk. |
| 1997 | Silver medal for High Honours in secondary education. |

## Work experience:

| | |
|---|---|
| 09.2002 - present | Kiev National Taras Shevchenko University. TA at the Faculty of Mechanics and Mathematics. |
| 01.2001 - 08.2002 | Verkhovna Rada (Ukrainian Parliament), Committee for Finance and Banking. Consultant. |
| 06.1999-9.2000 | "D-Vision" media design agency. Assistant Director. |
| 03.1999-06.1999 | Subsidiary of Swiss-American consulting company "Prime Capital Group". Financial analyst, internship. |
| 1998-1999 (academic year) | Department of Economics at National University of "Kiev-Mohyla Academy". Research assistant / Supervisor of the students' scientific research work. Part-time. |
| 1997 – 1998 (academic year) | Department of Math at National University of "Kiev-Mohyla Academy". Technical and operation assistant / Database&System Service Manager / Office Manager. Part-time. |

| **Summer work:** | I.C.I. Tour travel agency. Interpreter, guide-escort of tourist groups. |
|---|---|
| Summer 2000 | 1-month tour to Spain. |
| Summer 1999 | 1,5 month tour to North Africa (Libya, Algeria, Tunisia). |
| Summer 1998 | 1-month tour to Egypt. |

## Languages:

Ukrainian, Russian – native; English – fluent; German – good; French – basic.

## Computer skills:

Pc, Internet, Macintosh.

## Activities:

- Report at The Annual Scientific Conference of Young Ukrainian Economists, *Monetary policy and inflation in Ukraine* (in Russian), Youth Parliament of Ukraine (Ministry of Economics), Kiev, 1999.
- Member of the Youth Alternative Project, Standing Committee of the Verkhovna Rada (Ukrainian Parliament), research assistant, reports: *Forming of stock markets in Ukraine and Eastern European Countries, Economic reforms in Ukraine, Foreign investments in Ukraine*, 1999-2000.
- Member of the Students Scientific Society, Report on *Impacts of immigration in Ukraine*, October 1998.
- Member of the Society of Financial Analysts, January 1, 2001.
- Participant of the 9th International Math Competition, Warsaw 2002.

## Personal qualities:

Communicative; easily adaptable to new methods and techniques; high organized; responsible; team player; motivated; able to meet deadlines; ready for challenging work.

## Interests:

Billiards (professional), athletics, soccer, computers, travelling, literature, fishing.

# EXHIBIT 2

③

КОД ФОРМЫ ПО ОКУД _____
КОД УЧРЕЖДЕНИЯ ПО ОКПО _____

Поликлиника № 4
Минского р-на г.Киева

МЕДИЦИНСКАЯ ДОКУМЕНТАЦИЯ
Форма № 0.2.7/-У

**В Ы П И С К А**

из медицинской карты амбулаторного, стационарного
(подчеркнуть) больного

В _по месту требования_
название и адрес учреждения, куда направляется выписка

1. Фамилия, имя и отчество больного _Шарашка_
   _Александр Николаевич_

2. Дата рождения _1954,_

3. Домашний адрес _г. Киев, пр. Оболонский,
   д. 88, кв. 14_

4. Место работы и род занятий _БАТ "Квазар,"_
   _кладчик_

5. Даты: а)по амбулатории:заболевания _____
            направления в стационар _____
         б)по стационару:поступления _____
            выбытия _____

6. Полный диагноз (основное заболевание, сопутствующее ос-
   ложнение) _Ибс: Стенокардия напряжения_
   _ФК III Атеросклеротический кардиосклероз_
   _СН I-II Пароксизмальная форма мерца-_
   _тельной аритмии. Гипертоническая_
   _болезнь II ст., кризовое течение_

7. Краткий анамнез, диагностические исследования, течение болезни, проведенное лечение, состояние при направлении, при выписке

_[рукописный текст, частично неразборчив]_

Лечебные и трудовые рекомендации:

_[рукописный текст, частично неразборчив]_

Лечащий врач

CODE OF INSTITUTIONS ACORDING TO GCOE_____

Medical Documentation
Form No. 0.2.7/-U

Polyclinic No. 4
in Minskyi District of the city of Kyiv

## EXTRACT

from medical card of an ambulatory patient

The extract is given *to whom it may concern*_____
<small>name and address of the institution, where the extract is filed</small>

1. Surname, first name and patronymic of the patient_____ *Oleksandr Mykolayovych Sharapka*

2. Date of birth_____ *1954 yr.*
3. Home address_____ *The city of Kyiv, Obolonskyi Avenue, house No. 38, apartment No. 14*
4. Place of work and occupation_____ *Kvazar OJSC, adjuster*
5. Dates: a) at ambulance: date of a contraction of a disease_____
   assignment to an in-patient department_____
   b) at an in-patient department: date of arrival_____
   discharge from the hospital_____
6. Full diagnosis (main disease, concomitant complicating disease) *Coronary Heart Disease: exertional angina FK III. Atherosclerotic cardio sclerosis, heart failure I-II. Paroxysmal form of atrial fibrillation. Idiopathic hypertensia of II stage; course of a disease with crises.*
7. Short anamnesis, diagnostic study, course of a disease, treatment carried on, condition at the moment of assignment and discharge from the hospital_____
   *He has been suffering from idiopathic hypertensia and breast-pang fo 5 years. A treatment is ambulatory. IH proceeds with often crises. Since 2005 yr. paroxysms of of atrial fibrillation appeared. ECG as of 16.06.06. Irregular form of auricular fluttering (3:1, 4:1, 2:1). Ventricles contract with a rate 96 beats per minute. Symptoms of hypertrophy of left ventricle are available. Moderate changes in myocardium of dystrophic character.*
   *ECG as of 20.07.06. Sinus rhythm, stress on the right auricle. Intraatrial conduction delay.*
   *2-4/VIII-06. In sickness certificate with a diagnosis - hypertensic crisis, exertional angina FK III Treatment: digoxin, verinamil (text illegible), amiodarone hydrochloride, text illegible.*

Remedial and occupational recommendations:_____ *A monitoring of a cardiologist, therapeutic, text illegible,  physical loads limitation.*

(Official seal)
Kyiv State City Administration Main Department of Health Care and Medical Supply
Ukraine
Obolon District State City Administration in Kyiv Department of Health Care
Central District Polyclinic of Obolon District in Kyiv
CERTIFICATE OF WORK INCAPACITY

(Official seal)
Physician
Vira Pavlivna Holubytska

*August 4, 2006 yr.*

Attending physician_____    (signature)_____

**Цей переклад з української мови на англійську зроблений перекладачем бюро перекладів ТОВ „Знаток", Ішханян Юлією Володимирівною**

**м. Ки-**

-їв

03 СЕР 2006    я, Мармазова О.М., приватний нотаріус Київського міського нотаріального округу, засвідчую справжність підпису перекладача Ішханян Юлії Володимирівни та справжність цієї фотокопії.

**Зареєстровано в реєстрі за №** $8780$

**Стягнуто плати – за домовленістю.**

**Приватний нотаріус** _____ **МАРМАЗОВА О.М.**

