UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 05-10004-PBS |
| | ) | |
| OLEKSIY SHARAPKA | ) | |

OPPOSITION TO GOVERNMENT'S MOTION FOR RESTITUTION

Defendant Oleksiy Sharapka hereby opposes the Government's Motion for Restitution. At sentencing, the Court refused to enter an order of restitution because the government had not confirmed the amount of actual loss of the alleged victims.  In the more than six months since sentencing, the government has done no better.  The government's restitution schedule is speculative, based at least in part on actual merchandise found (which would not be subject to restitution because, by definition, it was recovered and therefore could be returned by the government), and without sufficient factual basis.  In opposition to the Motion for Restitution, Mr. Sharapka states as follows:

In a case such as this, the Court must enter an order of "restitution to the victim of the offense," 18 U.S.C. § 3663A(a)(1), unless "the number of identifiable victims is so large as to make restitution impracticable," or "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process."  18 U.S.C. § 3663A(c)(3).

At sentencing, the Court recognized the difficulty of entering a restitution order.  After a lengthy multi-day evidentiary hearing focusing on the number of victims and intended loss, the Court deferred the issue of restitution:

> THE COURT:  I won't get into restitution right now because there's a serious problem with trying to figure out who's going to -- we're going to have to send out victim loss statements because while I am persuaded that there are more than ten [victims], I have no sense of certainty about making restitution amounts now.  I can do that afterwards.

Tr. 10/25/06 at 22.  See also Id. at 61 ("THE COURT:  All right, 90 days come back with restitution figures.  You'll get a chance to challenge.  Do it conservatively.  I think, as a practical matter, unless someone can really prove it up, these vendors, et cetera, send that out to them.").

In response, the government did virtually nothing to verify amounts due to any identifiable victims.  Instead, the government filed its Motion for Restitution, listing on pages 3-4 a total of 15 alleged victims, with alleged losses of totaling $38,898.17.  The government represented at page 2 of its motion that "[a]s requested by the Court, the government has only included those losses that could be personally confirmed by the victims."  The government did not attach or otherwise provide a single victim loss statement or other indicator that any alleged "victim" had in fact confirmed any particular loss.

Upon filing of the Motion for Restitution, the defense reviewed the documents produced in the case to try to tie the listed restitution figures to evidence in the case.  We were unable to do so.  Having failed in that effort, the defense requested the government to disclose whatever documents reflected the work done to arrive at the restitution amounts for each listed "victim."  In response, the government provided emails from an agent in Boston and an agent in Atlanta describing how they each arrived at their restitution figures.  Notably, the government has not provided a single memo to the file, interview report, or victim loss statement to support a single one of its restitution figures for any alleged victim.

Attached as Exhibit 1 is a copy of the email dated April 4, 2007 from the Boston agent. In it, the agent does not describe a process of verifying loss amounts with particular victims, but simply concedes that he compiled the list for restitution from evidence seized in the case:

> The items listed for Sharapka's restitution were gathered from a
> list of items seized by the Boston Police Department when they
> originally searched his apartment.  These items could have been
> packages or invoices located in the apartment.  The items were
> either shipped to other addresses and/or in other names.  I believe
> the thought process behind the restitution was to locate invoices or
> packages which were shipped to addresses and/or names that
> Sharapka had been known to use or was in the possession of an
> identification of the individual.

Notably, this description does not involve any discussion or contact with any "victim" to determine if there was any actual loss suffered by the person or entity.  It appears from this description that the agents made no effort to determine if the "victims" whose invoices were found had been paid (that is, they would have suffered no actual loss, although the agent seems to assume that they were not paid).  Moreover, to the extent the alleged "victim" was included on the list because its merchandise was found in Mr. Sharapka's apartment, then such entity should not be listed for restitution because the merchandise could be returned to the alleged "victim." See, e.g., 18 U.S.C. §§ 3664(f)(3)(A), (f)(4) (restitution order may be made in-kind through the return of property).  In any event, this is hardly the type of showing required to support an order of restitution.

Attached as Exhibit 2 is a copy of the email dated March 15, 2007 from the Atlanta agent, Ben Murray.  In it, he describes the process he used to determine "the losses."  In his email, he only identifies a single vendor, Softman Products, who was spoken to directly -- and then, apparently, only at the outset of the case -- and for whom they have a receipt indicating a shipment.  This receipt is for $4,196.25.  There is no indication whether the merchandise at issue

3

in this receipt was recovered in connection with this case.  Indeed, there is nothing to tie that

particular Softman Products shipment to Mr. Sharapka, other than that it was sent to another

address in Atlanta.

With respect to the other amounts listed based on the Atlanta investigation, Agent Murray

only describes generally a process for contacting "banks" to determine losses.  The agent,

however, did not have details on which banks were contacted or how any loss figure was

determined, and admitted that he had no paperwork documenting contacts with particular banks

or whether there was any determination made of whether the bank employees contacted had

sufficient knowledge themselves to make representations on behalf of the particular bank.

According to the agent's email, "I contacted just about all the banks to confirm loss amounts and

some had information, but others didn't.  The ones that did would just say yea or nay and

amounts/losses and unfortunately, that is all the information I received; no paperwork."

This type of information can hardly form the basis for the Court to make findings to

support a restitution order.  Given the lack of reliable support for the government's restitution

figures after six months, the Court should deny the Government's Motion for Restitution and not

enter an order of restitution.

OLEKSIY SHARAPKA
By his attorney,

/ S /  Peter B. Krupp

Dated:  May 14, 2007                          Peter B. Krupp
                                                B.B.O. #548112
                                              Lurie & Krupp, LLP
                                              One McKinley Square
                                              Boston, MA  02109
                                              Tel:  617-367-1970

4

<u>CERTIFICATE OF SERVICE</u>

        I, Peter B. Krupp, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non registered participants on May 14, 2007.

                                          / S /  Peter B. Krupp

                                          Peter B. Krupp

## Peter B. Krupp

| | |
|---|---|
| **From:** | Bookbinder, Adam (USAMA) [Adam.Bookbinder@usdoj.gov] |
| **Sent:** | Thursday, April 05, 2007 9:45 AM |
| **To:** | Peter B. Krupp |
| **Subject:** | FW: RE: Sharapka |


Peter:

Below is a description from the Boston FBI agent of the method they used to come up with a
restitution figure.

--Adam

-----Original Message-----
From: Morrissey, Jeremy Timothy (LEO)
Sent: Thursday, April 05, 2007 9:19 AM
To: Bookbinder, Adam (USAMA)
Subject: Re: RE: Sharapka

Most values came from the invoices.  If the invoice did not contain a dollar amount I did
a google search for the item and just took the first price I saw.  This actually helped
Sharapka beecause the prices at the time of my search would be quite lower for technology
items.

----- Original Message -----
From: "Bookbinder, Adam (USAMA)" <Adam.Bookbinder@usdoj.gov>
Date: Wednesday, April 4, 2007 11:20 am
Subject: RE: Sharapka

> Did the values for the items come from the invoices or shipping
> documents?  ajb.
>
> -----Original Message-----
> From: Morrissey, Jeremy Timothy (LEO)
> Sent: Wednesday, April 04, 2007 10:10 AM
> To: Morrissey, Jeremy Timothy (LEO)
> Cc: Bookbinder, Adam (USAMA)
> Subject: Re: Sharapka
>
>
>
> ----- Original Message -----
> From: <jmorris9@leo.gov>
> Date: Wednesday, April 4, 2007 10:02 am
> Subject: Sharapka
>
> > Adam,
> >          The items listed for Sharapka's restitution were gathered from a
>
> > list of items seized by the Boston Police Department when they
> > originally searched his apartment.  These items could have been
> > packages or invoices located in the apartment.  The items were
> either
> > shipped to other addresses and/or in other names.  I believe the
> > thought process behind the restitution was to locate invoices or
> > packages which where shipped to addresses and/or names that
> Sharapka
> > had been known to use or was in the possession of an
> identification of
>
> > the individual.
> >
> > Thanks,

1

```
> > Jeremy
> >
> > Sorry this took so long.
> >
>
```

## Peter B. Krupp

| | |
|---|---|
| **From:** | Bookbinder, Adam (USAMA) [Adam.Bookbinder@usdoj.gov] |
| **Sent:** | Friday, March 16, 2007 2:22 PM |
| **To:** | Peter B. Krupp |
| **Subject:** | FW: Oleksiy Sharapka |

**Attachments:** xernya.txt; artis-stuf.doc; countzero.txt; countzero2222222222.txt; himikatishe.txt; NEWVictimList.xls; otHimi.rtf; Softman_Receipt1.jpg; Softman_Receipt2.jpg

Peter:

Here is an e-mail from the Atlanta USSS agent on how he calculated his portion of the restitution info for Sharapka. I'll forward you his spreadsheet in another e-mail, in case you don't have it handy. I'm still waiting for info from the FBI.

--Adam

---

**From:** Benedict S. Murray [mailto:Ben.Murray@usss.dhs.gov]
**Sent:** Thursday, March 15, 2007 8:13 PM
**To:** Bookbinder, Adam (USAMA)
**Subject:** Oleksiy Sharapka

In reference to your question about how we calculated the losses and came up with the spreadsheet. I'm assuming you have the original list I sent to Seth, however, I will include it again.

The first set of card numbers were given to me by American Express (AMX). I called my contact, Rob Simpson, 770-350-4986, but he has not returned my call to date. But he calculated his numbers in a similar method that I calculated mine.

The first vendor you should look at on the spreadsheet is "Softman Products". That is the only physical receipt that I have from any of the vendors. They are the ones who initiated this whole case by observing that they were being defrauded and contacted the local PD where the merchandise was being shipped to. The local police then contacted the USSS and that is how we became involved in this case. Please look at attachments "Softman_Receipt1" and "Softman_Receipt2".

Softman_Receipt1 shows an order date of "3/29/04" which is the first fraudulent order that was placed undetected to the vendor. Softman_Receipt2 shows an order date of "4/1/04" and that is when the vendor realized that they were being defrauded and contacted the PD. I put the loss on that one as $4,196.25, because although there are two invoices, only one was actually processed. The second order was intercepted by yours truly. Again, that is the only physical receipt that I have in my possession.

The method that I used to get the other figures is as follows. As you probably already know, I am not only the case agent but also the forensic examiner on this case. Therefore after conducting the forensic examinations on Sharapka's computer, several credit card numbers along with ordered merchandise were found in various folders/files/spreadsheets on the computer.

Once I found a credit card (CC) (and I found hundreds of them) I would run the

3/18/2007

first six digits of the CC, commonly referred to as the Bank Identification Number or BIN which gave me the bank information. At that point I would contact the bank and try to get any information about the account that I can. On several instances, I already had all the customer information but the banks were sometimes very tight lipped about the information they released.

I had to call bank by bank and give them the information that I had (usually I would say; have you experienced a loss of $xxx on CC account # xxx) and they would either say yes or no. I would then take that information and put it in a spreadsheet if they gave me $$$ loss information. We have a good working relationship with AMX in the Atlanta area, therefore, any AMX accounts that were defrauded and traced back to Sharapka were given to me in a spreadsheet by AMX. Rob Simpson is the person who always put the spreadsheets together for me, however, he never gave me the exact method that it was traced back to Sharapka.

So, in essence, what I am saying is that I do not have an exact document listing every transaction that Sharapka made including the ones on the spreadsheet (except for Softman Products). But I can also say that the numbers on the spreadsheet were not pulled out of the air either. There was a significant amount of time spent on trying to determine actual and potential loss amounts. By the time I became involved in this case, (starting with Softman Products) it had been years that Sharapka had been perpetrating his scheme. As you may already know, banks and vendors usually write-off their losses or have it covered by insurance and in most cases, wipe out the transactions, issue a new CC and keep moving forward. I found that out while calling banks to get the loss information. Many of the banks also mentioned that the "xyz" account was closed and they had no further information about the account. It is very difficult to get information about an account after months, or as in this case, years after the account was defrauded.

The only other receipts that I have is for the three cars that he purchased in the Atlanta area. However, it is difficult to determine exactly who the victims were on those. Simply because somehow he came up with over $120,000 in cash to purchase the vehicles and again he purchased the vehicles several months before I found out about it. The car dealership is not a victim because they were paid in full, in cash. So where did the money come from; a number of schemes that Sharapka had, but exactly where, your guess is as good as mine.

Attached are a few files of many that I found on Sharapka's computer. After determining the BIN, I contacted just about all the banks to confirm loss amounts and some had information, but others didn't. The ones that did would just say yea or nay about amounts/losses and unfortunately, that is all the information I received; no paperwork. Call me if you need more information and I will be happy to fax you anything I have.

Special Agent Ben Murray
United States Secret Service
Atlanta Field Office
Electronic Crimes Task Force
401 W. Peachtree Street
Suite 2900
Atlanta, Georgia 30308
(404)331-6111 office
(404)331-5058 fax

3/18/2007