# United States Court of Appeals
## For the First Circuit

No. 06-2715

UNITED STATES,

Appellee,

v.

OLEKSIY SHARAPKA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Lynch, Circuit Judge,

Merritt,* Senior Circuit Judge,

and Howard, Circuit Judge,

Adam J. Bookbinder, Assistant U.S. Attorney, with whom Michael J. Sullivan, U.S. Attorney, was on brief for appellant.
Peter B. Krupp with whom Lurie & Krupp, LLP was on brief for appellee.

May 22, 2008

---

* Of the Sixth Circuit, sitting by designation.

**MERRITT, Senior Circuit Judge.** Oleksiy Sharapka was sentenced to 121 months' imprisonment after he pled guilty to a 13-count information alleging identity theft, counterfeiting, and mail fraud. The charges stemmed from the defendant's illegal activities in Georgia — a state that he had fled during pretrial custody[1] — and in Boston, Massachusetts. At the time of his arrest, Sharapka was found with approximately 315 stolen credit card numbers, "ID kits," various other PIN and credit card numbers, and equipment valued at over $80,000.[2]

In this appeal, the defendant challenges his sentence on two grounds. First, he argues as a factual matter that the district court improperly determined that ten or more victims suffered financial losses due to his activities, a finding that increased his sentence by two levels. See U.S. Sentencing Guidelines Manual ("Guidelines") § 2B1.1(b)(2)(A) (2005). And second, he argues that the district court erred in imposing a two-level enhancement for possession of device-making equipment pursuant to § 2B1.1(b)(10)(A) of the Guidelines. The defendant does not raise any Sixth Amendment sentencing issue under the Blakely-Booker-Cunningham line of cases. See Blakely v. Washington, 542 U.S. 296 (2004); United

---

[1] The federal charges from Georgia were incorporated into the 13-count information in this case.

[2] Sharapka's scheme operated as follows: he would order merchandise online using the stolen credit cards, have the items sent to Mail Boxes Etc., arrange for someone to deliver the items to his house, and then ship them overseas (primarily to Russia).

States v. Booker, 543 U.S. 220 (2005); Cunningham v. California, 549 U.S. 270 (2007).

For the following reasons, we affirm the district court's sentence of 121 months.

I. Sharapka's sentence

Because the defendant only challenges the sentence, and not the underlying conviction, we will only address the facts pertinent to the issues raised. At sentencing, the district court found a base offense level of seven under § 2B1.1(a)(1) of the Guidelines, and then added the following enhancements: (1) 14 levels for the stipulated loss ($400,000 to $1,000,000), (2) two levels for more than 10 but fewer than 50 victims, (3) two levels for receipt of stolen property, (4) three levels for the commission of an offense while on release, (5) two levels for possession of device-making equipment, and (6) two levels for managerial role in the offense. The court then deducted two levels for acceptance of responsibility. The resulting offense level of 30 corresponded to a Guidelines sentencing range of 97-121 months. In addition, there was a 24-month mandatory consecutive sentence for aggravated identity fraud, which, when added to the level 30 offense, resulted in a range of 121-145 months. See U.S. Sentencing Guidelines Manual § 2B1.6 (2005). The district court then sentenced Sharapka to the bottom of this range, 121 months.

We review findings of fact at sentencing hearings for clear error and legal issues de novo. <u>United States</u> v. <u>Pacheco</u>, 489 F.3d 40, 44 (1st Cir. 2007).

II. The enhancement for more than 10 but fewer than 50 "victims"

At the first day of the sentencing hearing, a government agent testified that the issuing banks suffered direct financial losses as a result of Sharapka's credit card fraud. However, another agent later testified that he had been unable to quantify these values because banks purge credit card accounts that are the subject of fraud. The government maintained that the issuing bank, and not the credit card company, suffered the direct financial loss as a result of the fraudulent use.[3] After the second day of the sentencing trial, the district court indicated that it was still unsure as to whether there were, in fact, more than 10 victims who suffered a financial loss.

On the third day of the sentencing hearing, the government introduced a proffer — based on its conversation with American Express — that the vendor, and not the card-issuing bank, actually suffered the financial losses due to Sharapka's activities. The government then provided a list of 14 vendors its agents had

---

[3] The government provided evidence that Sharapka had used 10 or more cards, but conceded that it lacked sufficient evidence to prove that Sharakpa had used each of these cards. The evidence only showed that American Express had suffered a discernible, actual loss.

- 4 -

contacted and who had reported losses due to Sharapka's illegal purchases. Based on this newly introduced information, the district court imposed a two-level increase to the defendant's sentence. The defendant contends that the court erred by relying on this proffer; specifically, he argues that the proffer fails to link the alleged losses (<u>i.e.</u> items seized at Sharapka's apartment) and that the court's analysis of the document was insufficient. In addition, the defendant notes that the government was unable to confirm losses attributable to specific entities at a later restitution hearing.

The United States Sentencing Guidelines permit a court to increase a criminal defendant's sentence by two levels if the offense involved "10 or more victims." U.S. Sentencing Guidelines Manual § 2B1.1(b)(2)(A) (2005). To support such an enhancement, the sentencing judge must find that 10 or more victims suffered actual loss by a preponderance of the evidence. <u>United States</u> v. <u>Leahy</u>, 473 F.3d 401, 413 (1st Cir. 2007). The Guidelines define "actual loss" as the "reasonably foreseeable pecuniary harm that resulted from the offense." U.S. Sentencing Guidelines Manual § 2B1.1 (2005), cmt. n.3. The same explanatory note indicates that deference is owed to a sentencing judge's determination of the loss: "The court need only make a reasonable estimate of the loss. The sentencing judge is in a unique position to assess the evidence and estimate the loss based on that evidence." <u>Id.</u> In the instant

case, we believe that the district court's determination that vendors were included within the definition of "victim" was correct, and also that the record adequately supports the two-level increase for more than 10 victims.

As described *supra*, the government first argued that only financial institutions could suffer losses under § 2B1.1(b)(2)(A), and then amended their theory to also include vendors. This change resulted from an agent's discussion with American Express in which the government learned that banks suffer losses caused by fraudulent ATM use, while vendors incur losses resulting from fraudulent credit card use. At the sentencing hearing, the defendant contended that this new interpretation was incorrect. We believe that the district court properly relied on both the testimony regarding the conversation with American Express and the Sentencing Guidelines explanatory notes, which defines "victims" for purposes of § 2B1.1(b)(2)(A) as including "individuals, corporations, companies . . ." See U.S.S.G. § 2B1.1(b)(2)(A), cmt. n.1. Such a definition is broader than financial institutions and fairly encompasses the vendors identified by the government agents.

As a result, the question is whether the government provided sufficient evidence to support the court's finding that more than 10 vendors suffered financial losses due to Sharapka's credit card fraud. The government proffered that its agents had contacted 14 vendors who verified that they had suffered losses resulting from

this fraud. In addition, the government provided a spreadsheet listing the amount of loss and specific vendors for fraudulent purchases made using American Express cards. The government then gave the information about the 14 vendors to defense counsel and the court. The defendant contends that because the government did not later rely on the same information at the restitution hearing, the district court should have disregarded this evidence at sentencing.

We believe, however, that the government's factual determination — based on the government's proffer — was sufficient to support its enhancement under clear error review. The fact that the government did not later rely on the same 14 vendors at the restitution hearing does not necessarily cast doubt on the sentencing phase; rather, it appears that vendors may, for various reasons, have chosen not to submit the victim impact statements necessary to qualify for restitution. Similarly, we believe that the spreadsheet identifying the 14 vendors sufficiently connects their losses to Sharapka's fraudulent activities. Accordingly, the two-level enhancement was proper.

III. The enhancement for possession of device-making equipment

The defendant also contends that the court's two-level enhancement for possession of "device-making equipment" resulted in impermissible double counting. See U.S. Sentencing Guidelines

Manual § 2B1.1(b)(10)(A)(i) (2005). This enhancement stemmed from the discovery of a read/write scanning device at the defendant's home. According to Sharapka, the mandatory, consecutive sentence for aggravated identity theft — punishable under § 2B1.6 of the Guidelines — precludes application of a two-level increase for specific offense characteristics under § 2B1.1(b)(10).

Section § 2B1.6 compels the sentencing court to impose a consecutive punishment for identity theft counts punishable under 18 U.S.C. § 1028A (<u>i.e.</u>, counts eleven and twelve of the information to which Sharapka pled guilty). However, the commentary to the Guidelines states that "if a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for the transfer, possession, or use of <u>a means of identification</u> . . ." U.S. Sentencing Guidelines Manual § 2B1.6 (2005), cmt. n.2 (emphasis added). This section therefore applies to certain enhancements under § 2B1.1(b)(10), but not to all. Section 2B1.1(b)(10) reads as follows:

> If the offense involved (A) the <u>possession or use of any</u> (i) <u>device-making equipment</u>, or (ii) authentication feature; (B) the production or trafficking of any (i) unauthorized access device or counterfeit access device, or (ii) authentication feature; or (C) (i) the unauthorized transfer or use of any means of identification unlawfully to produce or obtain any other means of identification, or (ii) the possession of 5 or more means of identification that unlawfully were produced from, or obtained by the use of, another means of identification, increase by 2 levels.

(emphasis added). The defendant argues that because § 2B1.1(b)(10)(C)(i) includes the language "transfer" and "possession," the prohibition under note 2 of § 2B1.6 operates to bar application of any enhancement. The government responds by arguing that the enhancement in this case resulted solely from "the possession or use of device-making" equipment, which makes § 2B1.6 inapplicable.

We believe that the plain language supports the government's argument. § 2B1.1(b)(10) lists different offense characteristics, separated by the conjunction "or," whose presence may justify a two-level enhancement. Had the court imposed the enhancement under § 2B1.1(b)(10)(C)(i), then § 2B1.6 would preclude application of a two-level enhancement. In Sharapka's case, however, the court imposed its enhancement after finding that the defendant possessed "device-making equipment" — to wit, a read/write device. This finding implicates § 2B1.1(b)(10)(A)(i) and not § 2B1.1(b)(10)(C)(i); the two are different offense characteristics. Because § 2B1.6 does not cover possession of device-making equipment, the court acted appropriately in applying both the mandatory minimum under § 2B1.6 and the two-level enhancement under § 2B1.1(b)(10)(A)(i). To hold otherwise would result in an expansion of the application of § 2B1.6 beyond the specific characteristics identified by the Guidelines in the explanatory text.

We therefore affirm Sharapka's sentence.