UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
OLEKSIY SHARAPKA,              )
                               )
          Petitioner,          )
                               )
     v.                        )    CRIMINAL NO. 05-10004-PBS
                               )
UNITED STATES OF AMERICA,      )
                               )
          Respondent.          )
_____)
```

**MEMORANDUM AND ORDER**

May 16, 2011

Saris, U.S.D.J.

Petitioner Oleksiy Sharapka seeks to vacate his sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel during the sentencing process.  The government argues that Petitioner cannot meet either prong of the Strickland v. Washington, 466 U.S. 668 (1984) test.  After a review of the submissions, the motion to vacate is **DENIED** on all grounds except with respect to the enhancement for receipt and sale of stolen property.  On that ground, the Court orders further briefing.

## I.  FACTUAL BACKGROUND

### A. Fraud Scheme in Georgia

In 2004, Sharapka, living in Atlanta, Georgia, was attending Georgia State University, working towards a Ph.D. in economics and public finance.  He also had a masters degree from Ukraine

University.  While in Atlanta, however, Sharapka participated in a fraudulent scheme in which he obtained, via the internet, stolen credit card and identity information.  Rule 11 Hr'g Tr. 15-16, May 4, 2006.  Sharapka himself then used these false identifies to purchase computers, cameras and other goods online, which he then sold or re-shipped to people in Russia.  Id. at 16-17.  Altogether the government contended that the losses in the Georgia portion of the case were $300,000.  Rule 11 Hr'g Tr. 17.

On May 17, 2004, Sharapka was arrested while retrieving a package of stolen merchandise from a UPS store in Roswell, Georgia.  Sent. Hr'g Tr. Day One 9-10, October 23, 2006 ("Day One").  After Sharapka was charged in the Northern District of Georgia, he was released on bail to house arrest with electronic monitoring.  Rule 11 Hr'g Tr. 17.  While the charges were pending against him, Sharapka cut his bracelet and fled.  Id.

### B.  **Fraud Scheme in Massachusetts**

In July 2004, while a fugitive, Sharapka assisted in  a similar unlawful scheme in the Boston area, which involved stolen identity and credit card information.  Id. at 22.  At the plea colloquy, Sharapka claimed that others obtained that false information.  Id.  The people who employed him ordered merchandise and sent it to Sharapka at an address supplied by him.  Id. at 23.  Sharapka then re-shipped the merchandise.  Id. at 22.  In November 2004, after law enforcement agents saw

Sharapka receiving one of the stolen packages, the officers lawfully searched his apartment. <u>Id.</u> at 24. In it, officers found the following: 1) licenses containing other person's names and identity information, but Sharapka's photograph; 2) credit and ATM cards that were in other people's names; 3)sixty or so white blank credit cards with magnetic strips containing the bank account information of numerous individuals; 4) a manual magnetic swipe card reader/writer; 5) approximately $14,000 in cash; and 6) credit card and bank account information, social security numbers, and mothers' maiden names on Sharapka's computer. <u>Id.</u> at 24-26; Geary Affidavit ¶ 10 (Attachment 1 to Doc. No. 42).

On May 4, 2006, Sharapka pled guilty in this Court to mail fraud (Counts 1-6); possession of five or more false identity documents (Count 7); possession of fifteen or more fraudulent access devices (Counts 8 and 9); possession of device making equipment (Count 10); aggravated identity theft (Counts 11 and 12); and obstruction of justice (Count 13). Rule 11 Hr'g Tr. 4-5.

**C. <u>Sentencing</u>**

Sentencing proved to be a complicated matter, involving  3 days of evidentiary hearings from October 23-25, 2006, focused largely on the amount of loss and Sharapka's role in the scheme. Sharapka was sentenced to 121 months incarceration. This Court reached the sentence by starting with a base offense level of 7

under § 2B1.1(a)(1) of the Guidelines.  Then, it added the
following enhancements: (1) 14 levels for the stipulated loss
($400,000 to $1,000,000), (2) 2 levels for more than 10 but fewer
than 50 victims, (3) 2 levels for receipt of stolen property, (4)
3 levels for the commission of an offense while on release, (5) 2
levels for possession of device-making equipment, and (6) 2
levels for role in the offense.  Sent. Hr'g Tr. Day 3 20-21,
October 25, 2006 ("Day 3").

The Court then deducted 2 levels for acceptance of
responsibility, leading to a total offense level of 30 and a
Guideline Sentencing Range of 97-121 months for a defendant in
criminal history category I.  Id. at 21-22.  When the 24-month
mandatory minimum sentence for aggravated identity fraud was
added, the sentencing range became 121-145 months.  Id. at 22.
Taking into account the 3553(a) factors, this Court sentenced
Sharapka to the low end of the advisory range, for a total
incarceration of 121 months.

### D. Direct Appeal and Post-Sentencing Motions

On May 22, 2008, the United States Court of Appeals for the
First Circuit affirmed this Court's sentence.  United States v.
Sharapka, 526 F.3d 58, 60 (1st Cir. 2008).  On appeal, Sharapka
challenged his sentence on two grounds.  Id. at 59.  First, he
argued that this Court incorrectly found that ten or more victims
suffered financial losses.  Id.  Second, he argued that this

Court improperly included a 2-level enhancement for possession of access device-making equipment. Id. The First Circuit rejected both grounds and affirmed this Court's sentence. Id. at 61-62. Sharapka did not file a petition for writ of certiorari with the United States Supreme Court.

On August 13, 2009, Sharapka, represented by a new attorney, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel. Specifically, Sharapka claims that his trial counsel 1) failed to conduct a sufficient investigation to properly challenge the 2-level enhancement based on 10 or more victims; 2) failed to object to the 2-level enhancement for receipt of stolen property under U.S.S.G. § 2B1.1(b)(4); 3) failed to adequately investigate the government's contentions about the amount of loss, resulting in the stipulation of a greater loss under U.S.S.G. § 2B1.1(b)(2)(A) than was accurate, appropriate, or reasonable; and 4) failed to challenge the government's actions in withholding the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

## II. STANDARD

A defendant may seek post-conviction relief under § 2255 from his sentence in four instances: if the sentence "(1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory

maximum, or (4) was otherwise subject to collateral attack."
David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing
Hill v. United States, 368 U.S. 424, 426-27 (1962) (construing
Section 2255)).  The claimed error for which a party requests
relief must be "a fundamental defect which inherently results in
a complete miscarriage of justice."  United States v. Addonizio,
442 U.S. 178, 185 (1979) (citing Hill, 368 U.S. at 428).
"Section 2255 is not a surrogate for a direct appeal."  David,
134 F.3d at 474.

The petitioner bears the burden of establishing both the
need for § 2255 relief and the need for an evidentiary hearing.
Barrett v. United States, 965 F.2d 1184, 1186 (1st Cir. 1992).
"An evidentiary hearing is not required where the section 2255
petition, any accompanying exhibits, and the record evidence
'plainly [reveal] . . . that the movant is not entitled to
relief.'"  Id. (quoting Rule 4(b), Rules Governing Section 2255
Proceedings).  Summary dismissal of a § 2255 claim is appropriate
when the petition "(1) is inadequate on its face, or (2) although
facially adequate, is conclusively refuted as to the alleged
facts by the files and records of the case."  Id. (quotation
marks and citation omitted).

### III.  DISCUSSION

To succeed on an ineffective assistance claim, the
petitioner must establish that (1) "counsel's representation fell

below an objective standard of reasonableness," and (2) "there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." United States v. De La Cruz, 514 F.3d 121, 140 (1st Cir. 2008) (citing Strickland v. Washington, 466 U.S. 668, 688, 694 (1984)). The review of counsel performed under the first prong is highly deferential; a petitioner must show that "given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (internal quotation marks omitted). Counsel's tactical decisions cannot generally form a basis for an ineffective assistance of counsel claim. Murchu v. United States, 926 F.2d 50, 58 (1st Cir. 1991) ("[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.") (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir. 1983)); United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991). "[T]he Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense." Scarpa v. Dubois, 38 F.3d 1, 8 (1st Cir. 1994). Indeed, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight[.]" Strickland, 466 U.S. at 689.

The second prong of the <u>Strickland</u> test requires a petitioner to demonstrate actual prejudice from the alleged mistakes of counsel. <u>Rice v. Hall</u>, 564 F.3d 523, 525 (1st Cir. 2009) (describing the second prong as a "prejudice requirement" that has been "variously stated"). Further, to prevail on a Section 2255 ineffective-assistance claim, a petitioner must establish both ineffective assistance of counsel and entitlement to Section 2255 relief by a preponderance of the evidence. <u>Lema v. United States</u>, 987 F.2d 48, 51 (1st Cir. 1993) ("The burden is on the petitioner to demonstrate ineffective assistance by a preponderance of the evidence.").

### A. <u>Ten or More Victims</u>

Sharapka first argues that he received ineffective assistance of counsel because his original attorney failed to adequately investigate the government's proffer that there were ten or more victims.

In the government's sentencing memorandum and during the first two days of the sentencing hearing, the government argued that only financial institutions suffer a direct financial loss when there is credit card fraud. On day 3 of the evidentiary sentencing hearing, however, the government informed this Court that, based on a conversation with American Express, it had learned that *vendors* - not banks - are the ones who ultimately suffer a loss. The government then stated that, the night

before, it had contacted and confirmed losses with fourteen

vendors:

> THE COURT: No, I want to know, who are the fourteen that you confirmed?
> MR. BERMAN: Okay. There's a vendor named [ ]. This is the product that – the vendor for $8,400 worth of computer equipment that the defendant was caught with in Atlanta that initially started, I guess, this entire series of incidents.
> THE COURT: And you confirmed that he never got reimbursed, you know –.
> MR. BERMAN: Yes, I did.
> THE COURT: – or that company did? And for each one of these, you talked to a company?
> MR. BERMAN: That's right.
> THE COURT: Or an agent talked to a company?
> MR. BERMAN. Yes.

Day 3 at 4-5.  Berman listed thirteen vendors and one bank that

were never reimbursed for their actual loss.

This Court then asked trial counsel how he wished to proceed

in light of this new information.  After a discussion off the

record with Sharapka, counsel did not challenge the number of

victims, but rather argued that vendors could not be "victims"

under 2B1.1(b)(2)(A).  After the Court stated that vendors indeed

*could* be victims, counsel made a general objection to the

enhancement:

> MR. FERNANDEZ: If I can have a moment, Judge.
>   (Discuss off the record between Mr. Fernandez and the defendant.)
> MR. FERNANDEZ: Thank you, your Honor. Again I would just make a general objection as to the last minute of all this. I still think –.
> THE COURT: Do you want time?
> MR. FERNANDEZ: No. Mr. Sharapka and I have spoken, and I just make an objection to this enhancement basically.

Day 3 at 9.

Under <u>Strickland</u>'s performance prong, counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." 466 U.S. at 691. This duty, however, does not require a lawyer "to probe every evidentiary lead." <u>Janosky v. St. Amand</u>, 594 F.3d 39, 49 (1st Cir. 2010). Rather, a decision to eschew investigation "must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." <u>Strickland</u>, 466 U.S. at 691.

In the instant case, after hearing the government's last-minute proffer, and discussing the matter with Sharapka, who is a very bright and proactive defendant, Fernandez performed no investigation after being offered a continuance by the Court. Even if Fernandez was unreasonable in not asking for a continuance to verify the vendor loss information, Sharapka's claim fails the second prong of the <u>Strickland</u> test. Sharapka has not produced persuasive evidence that would show that the outcome of his sentencing would have been different had Fernandez investigated the government's testimony that there were ten or more vendors who suffered financial loss. <u>See</u> <u>Bradford v. Whitley</u>, 953 F.2d 1008, 1012 (5th Cir. 1992) (one cannot satisfy the second prong of <u>Strickland</u> with mere speculation and conjecture).

Furthermore, while Sharapka contends that "there was no down-side risk to additional time," this is not the appropriate standard and falls far short of a showing of prejudice. See Knowles v. Mirzayance, 129 S. Ct. 1411, 1419 (2009) ("This Court has never established [a] . . . 'nothing to lose' standard for evaluating Strickland claims.").

It is true that the government did not provide sufficient documentation to support a restitution order. Sharapka contends that, because the vendors refused to give victim impact statements, there is insufficient evidence to show that they suffered any loss. This argument, however, was addressed and rejected by the First Circuit:

> The fact that the government did not later rely on the same 14 vendors at the restitution hearing does not necessarily cast doubt on the sentencing phase; rather, it appears that vendors may, for various reasons, have chosen not to submit the victim impact statements necessary to qualify for restitution. Similarly, we believe that the spreadsheet identifying the 14 vendors sufficiently connects their losses to Sharapka's fraudulent activities.

Sharapka, 526 F.3d at 61. Thus, *even if* Sharapka's attorney was objectively unreasonable in failing to investigate, Sharapka has not shown prejudice. His first claim fails.

## B. 2-Level Enhancement for Receiving Stolen Property

Sharapka's second argument for relief is that his attorney should have objected to the 2-level enhancement for receiving stolen property because the enhancement does not apply to individuals who have stolen property themselves.

11

By its express terms, the 2-level enhancement under U.S.S.G. § 2B1.1(b)(4) applies "if the offense involved receiving stolen property, and the defendant was in the business of receiving and selling stolen property."  The enhancement applies to defendants who receive stolen property from others and subsequently sell it ("professional fences"), as opposed to thieves who make a business of stealing property.  United States v. McMinn, 103 F.3d 216, 219 (1st Cir. 1997) ("[S]tealing property from another normally does not equate with 'receiving' property from its rightful owner.").  As the First Circuit pointed out, "nothing prevents a professional thief from also conducting a fencing operation of sufficient size and continuity to qualify for the . . . enhancement; criminals, too, may have more than one line of business."  Id. at 222.  However, a thief does not qualify for the enhancement if "the *only* goods he distributed were those which he had stolen."  Id. (emphasis added).  The government, however, bears the burden of proving that the thief "received and sold goods stolen by others" in order to apply the enhancement. Id.

Here, there was conflicting evidence as to whether Sharapka stole the merchandise himself in Boston.  Secret Service Agent Murray testified that, while in Georgia, Sharapka used the fraudulently acquired credit card numbers to place orders online. Day One at 13.  According to Agent Murray, Sharapka would order

items from various locations, receive them, and then sell them on eBay or ship them back to Russia, Latvia, Romania, or other countries in Europe. Id.

Throughout the proceedings, Sharapka consistently stated that he did not *order* the merchandise during the Boston phase of his activity. On February 20, 2005, during a proffer session, Sharapka informed FBI agents that others ordered the merchandise and had it shipped to Sharapka's drop addresses. Govt. Opp. to Def.'s Mot. Dismiss, Ex. 2, at 3. Furthermore, in his plea colloquy, Sharapka contradicted the prosecutor's plea proffer and insisted that, for the Massachusetts portion of the scheme, he was not the one who placed the fraudulent orders:

> There is just the terminology when Mr. Prosecutor
> mentioned that the packages were ordered by me. In some
> way it was a little different. I was – yes, I was
> guilty. I was providing addresses, and I was receiving
> merchandise. But orders and all this obtaining
> information or something, it was basically done by
> other people who basically employed me.

Rule 11 Hr'g Tr. 23. FBI agent Christopher Geary, who performed a review of Sharapka's Massachusetts computer, corroborated Sharapka's basic contention:

> Q.   From your analysis of his computer and through the
>      proffers that he's given, is it your opinion that
>      he was ordering this information himself using
>      credit cards?
> A.   No, it is not my opinion through this
>      investigation that he was physically doing the
>      ordering.
> Q.   And he actually informed you that he was just
>      receiving this; he was providing addresses and
>      receiving merchandise?

13

A.   Yes, and then reshipping them.

Day 2 at 55.

It was not conclusively shown that Sharapka placed any, let alone all, of the orders in Massachusetts.  In Sharapka's Massachusetts apartment, law enforcement agents located physical receipts.  Sent. Hr'g Tr. Day 2 9-10, October 24, 2006 ("Day 2"). The receipts showed that merchandise was ordered and sent to various mail drops.  Id.  During a subsequent review of Sharapka's computer, FBI agents found text files containing order information.  Id. at 37-38.  The order information included the type of merchandise, whom it was being shipped to, an address that went along with the shipping address, and sometimes a telephone number.  Id.  These orders tracked merchandise distinct from the goods and receipts found in Sharapka's apartment.  Id. The mere presence of receipts and order information on Sharapka's Massachusetts computer, however, does not necessarily indicate that Sharapka placed the orders.  Sharapka stated that as a mid-level person in a larger scheme, he was responsible for coordinating runners to pick up packages from drop addresses.  In order to do so, he likely needed the order information to keep track of incoming packages and his potential earnings.

Regardless of whether the argument could have been made that the enhancement should not have applied because Sharapka was a thief, not a fence, the relevant point is whether defense counsel

14

was ineffective for not arguing against the enhancement. From the perspective of defense counsel, Sharapka stated he did not physically place the orders, and FBI agent Christopher Geary agreed. Indeed, at sentencing, trial counsel noted that he had not seen evidence that Sharapka did the ordering:

> So there's no doubt that he did try this, but, Judge, he, and from the agent's own words, never ordered any merchandise using credit cards. He just received them...he never admitted to credit card fraud, nor does he ever admit in any way to being someone who purchased items, and I haven't seen any evidence that shows that he has. He's always been adamant that he's not been one who orders items.

Day 3 at 29-30.

In his affidavit supporting the habeas petition, trial counsel admits that he never researched U.S.S.G. § 2B1.1(b)(4) and did not realize that the enhancement might not apply. While this failure to research the issue seems facially unreasonable, it was not under the circumstances. The client consistently stated he did not order the merchandise, but admitted to receiving the goods and then re-shipping them. If counsel had argued the enhancement was inapplicable, he would have had to argue that Sharapka was the person stealing the goods (by fraudulently ordering them) in order for this Court to determine the enhancement did not apply. This may have been a concession that counsel believed tactically disadvantageous to make, both because it was inconsistent with the weight of the evidence, and because a thief seems more culpable than a middleman. In light

of this consideration, counsel's action in not contesting the enhancement were not "so patently unreasonable" that no competent attorney "would have done it." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006). This argument for relief fails the first prong of the Strickland test. Strickland, 466 U.S. at 689.

Nonetheless, in re-reading the evidence, the Court is troubled by one additional issue that petitioner has not raised here, but that potentially creates a problem relating to the §2B1.1(b)(4) enhancement. Specifically, the Court's review of the extensive record has revealed no substantial evidence that Sharapka actually sold the goods he received in Massachusetts, as opposed to simply reshipping them. As far as the Court could determine, the Rule 11 transcript, the sentencing hearing transcripts, the defendant's proffer reports, and the PSR contain only one reference to resale in Massachusetts, and that by the Government's attorney in passing. See Rule 11 Hr'g Tr. 22 ("[H]e working with others used this information to order things through the Internet and have them sent to him in various names to Mail Boxes Etc. in or around Massachusetts. These items were then either sold, reshipped, or used by the defendant."). Many more references to Sharapka's conduct in Massachusetts mentioned "reshipping." See, e.g., Day 2 at 52, 53, 55, 59, 64; Day 3 at 31, 33; Proffer Report, Feb. 14, 2005 at 1 (Ex. 4 to Doc. No. 39); Grand Jury Transcript, Oct. 19, 2005 at 6 (Ex. 9 to Doc. No. 39). Several statements in the record strongly imply that he was

16

only reshipping, not selling.  See, e.g., Day 3 at 32 ("[H]e was
shipping packages to a location in New York, a warehouse[.]"), 48
("And he was doubtful that address to which we were sending
merchandise, and that address was in Syracuse, New York. . . . So
basically he evacuated that address, . . . he told me that 'We
continue to work, but you have to hold merchandise until I will
set up and you accumulate an address.'"); Proffer Report, Jan.
31, 2005 at 4 (Ex. 3 to Doc. No. 39) (stating that "Sharapka made
money for accepting the shipments" but not mentioning resale);
Grand Jury Tr. at 7 ("[H]e would, again, reship them to someone
who would then ship them overseas.").  The parties have not cited
any evidence on this point with regard to Sharapka's conduct in
Massachusetts.

McMinn suggests that the plain language of the enhancement
controls its application. See McMinn, 103 F.3d at 220 ("Thus, a
fair reading of the plain language employed in section
2B1.1(b)(4)(B) strongly suggests that a defendant engaged in
selling only the property he is responsible for stealing has not
'received' it in the sense contemplated by the Sentencing
Commission.").  Just as the enhancement would have been improper
if Sharapka had not "received" the goods (that is, if he had
stolen them himself), so it would have been improper in the
absence of evidence that Sharapka had *sold* the goods in keeping
with the language of § 2B1.1(b)(4), which states that it applies

where "the defendant was a person in the business of receiving *and selling* stolen property" (emphasis added).

While it is uncontested that Sharapka resold goods during his time in Georgia, it is also uncontested that he ordered those goods in Georgia as well. Therefore with reference to his conduct in Georgia, the enhancement would not apply under the holding of McMinn.

Counsel's failure to raise the issue therefore appears to have been ineffective and prejudicial, since the Court would not have applied the enhancement if Sharapka had not sold the goods in Massachusetts. However, in light of the fact that even Sharapka's current habeas counsel has not raised this issue, it is possible the Court has missed some evidence of sale in the record. Nonetheless, in the absence of any record evidence that Sharapka sold the goods in Massachusetts, the § 2B1.1(b)(4) enhancement would not be applicable. Counsel shall supplement their briefs on this point within 14 days.

**C. The Loss Amount Stipulation**

Next, Sharapka argues that his attorney failed to investigate adequately the government's contentions about the amount of loss and, consequently, ended up stipulating to a greater loss than was accurate. Here, there is no need to resolve whether counsel's performance was deficient, because there is no showing of prejudice. See Malone v. Clarke, 536 F.3d

54, 64 (1st Cir. 2008) ("[I]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") (internal quotation marks and citation omitted).

Prior to sentencing, the government sought a 16 level increase for over $1 million in intended losses. Govt. Sent. Memo. 4. Additionally, the PSR report calculated the actual and intended losses at more than $1 million. The calculation was based on:

- A spreadsheet provided by American Express, documenting actual and attempted fraudulent purchases using American Express cards;
- the value of stolen merchandise seized from Sharapka's Massachusetts and Georgia apartments;
- the credit limits of $500 per card default value for credit card numbers found in Sharapka's apartments and on his computer; and
- the value of stolen merchandise listed on documents found on Sharapka's computer.

Presentence Report § 32.

After two days of testimony during the sentencing hearing, the two sides stipulated to a loss figure of between $400,000 and $1,000,000. Day 2 at 47. This Court also conducted a colloquy with Sharapka to ensure that he understood the significance of the stipulation. Id. at 48.

When determining loss, the court must merely make a "reasonable estimate of loss . . . based on available information." U.S.S.G. § 2B1.1 cmt. n.3(C). See United States v. Carrington, 96 F.3d 1, 6 (1st Cir. 1996) ("Loss need not be

determined with precision, and in fact may be inferred from any reasonably reliable information."). In this case, the Court heard 3 days of testimony during sentencing, with a significant portion devoted to loss. After listening to all the evidence, this Court noted that "there was more than ample evidence that this crime involved a huge amount of money." Day 3 at 57.

In support of his claim, Sharapka contends that a computer file listed by the FBI as documenting a $85,496 loss actually documented a loss of less than $22,000. Def.'s Memo. Mot. Vacate, Ex. 1 & 2. Without more, however, this does not create a reasonable probability that the outcome would have been different had counsel investigated further.[1]

As noted above, the government and the PSR both initially took the position that the losses exceeded $1 million. Even if counsel had been able to convince the Court that the FBI loss calculation should have been approximately $63,000 lower, there is insufficient evidence to conclude that this would have brought the total amount below $400,000. For example, the American Express spreadsheet *alone* listed $312,241 in actual and intended loss. Govt. Opp. to Def.'s Mot. Vacate, Ex. 1. Combined with other substantial amounts, the Court likely would have found that

---

[1] Petitioner requests leave to conduct discovery as to actions by his counsel to address the loss issue. That request is denied. Even if there were an inadequate investigation, there is no showing of prejudice.

the losses fell within the $400,000 to $1 million range.  Having failed to show prejudice, petitioner's argument on loss fails.

### D. __The Third Point for Acceptance of Responsibility__

Finally, Sharapka argues that counsel failed to challenge the government's actions in withholding the third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).  This argument merits little discussion.  Contrary to Sharapka's assertions, his trial counsel *did* argue that this Court should grant a third point, in both his sentencing memorandum and during the sentencing hearings.  Def. Sent. Memo. 2, 11; Day 3 at 16-21. Further, this Court considered the issue, but determined Sharapka was not entitled to the third point because of the last-minute nature of the defendant's plea.  Day 3 at 16-21.  This argument thus easily fails both prongs of the Strickland test. 466 U.S. at 693-94.

### ORDER

For the reasons stated, Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Docket No. 112] is __DENIED__ on all grounds, but the Court reserves on the applicability of the enhancement.  Briefs shall be submitted within 14 days.

/s/ PATTI B. SARIS
Patti B. Saris
United States District Judge

21